A91A1939. ELIOPULOS et al. v. THE STATE.
(416 SE2d 745)

BEASLEY, Judge.

Following the denial of their amended motion for new trial, co-defendants Helen (Connie) Eliopulos and Twyla Sowers appeal their convictions for trafficking in cocaine by unlawfully and knowingly possessing 1,867 grams of 66 percent pure cocaine. OCGA § 16-13-31 (a) (1) and (a) (1) (C). The notice of appeal also mentions Sowers' concurrent conviction for speeding, OCGA § 40-6-181, but no enumerations address it so it is not before us. Even when embraced in an enumeration of error, however, any challenge not pursued by argument or citation of authority is deemed abandoned. Court of Appeals Rule 15 (c) (2). *Ramsey v. State,* 183 Ga. App. 48, 51 (4) (357 SE2d 869) (1987).

The contraband was found during a search following the traffic stop for speeding. Sowers, Eliopulos, and Michael Millican were traveling in a rental car from Miami, Florida, back to their homes in Columbus, Ohio. Millican entered a negotiated plea prior to trial and testified as a State's witness. Eliopulos and Sowers elected not to testify at trial and the defense rested following the State's case.

Appellants challenge the court's alleged refusal to disregard Millican's trial testimony pursuant to OCGA § 24-9-85 (b) in considering the motion for new trial on evidentiary grounds. They also claim as error the trial court's refusal to compel attendance of an out-of-state witness.

1. Appellants contend that they are entitled to a new trial because of newly discovered evidence that Millican's trial testimony was perjured. See OCGA §§ 5-5-23; 16-10-70 (a). They maintain that such evidence, uncovered in a post-conviction investigation by new counsel and consisting of affidavits by Eliopulos and Sowers, by two brothers

from Columbus claiming to be acquaintances of Millican's, by two of Millican's former cellmates, and by appellants' trial counsel, established beyond any doubt that Millican had a history of involvement with the person who had arranged for the purchase of the drugs in Florida, that Millican was the moving force behind the purchase and transportation of the cocaine, and that every material element of Millican's self-exculpatory testimony was false. They urge that Millican's testimony must be rejected in its entirety, leaving no other evidence which could have supported their convictions.

To obtain a new trial because of newly discovered evidence, "a movant must satisfy the court '(1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness is attached to the motion or its absence accounted for; and (6) that the new evidence does not operate solely to impeach the credibility of a witness. All six requirements must be satisfied before a new trial will be granted.' *Humphrey v. State*, 252 Ga. 525, 528 (314 SE2d 436) (1984)." *Young v. State*, 194 Ga. App. 335 (1) (390 SE2d 305) (1990).

Aside from any questions of the timing of appellants' knowledge or of diligent acquisition, the affidavit evidence, if accepted, operates solely to impugn Millican's credibility at trial. This is not enough in and of itself to warrant another trial. Id.

Furthermore, the degree of materiality of the evidence is such that it probably would not produce a different verdict. Id.

If the affidavit evidence shows without dispute that Millican's trial testimony was perjured and should be wholly disregarded because uncorroborated by circumstances or other unimpeached evidence under OCGA § 24-9-85 (b), the remainder of the State's evidence showed the following.

On January 15, 1990, at approximately 7:00 p.m., Millican's roommate rented a car in Columbus. At the time of rental, the car's mileage reading was 7,475. Later that evening, Eliopulos and Sowers, who were roommates, and Millican headed to Florida in the rented car. They arrived in Miami the following day, the 16th, and rented a motel room in the southwest part of the city at 6:49 p.m. They had with them written directions to that particular motel. The room was paid for in cash and Eliopulos registered for it under the fictitious name, "Coleen Eliozulous." The signature spells the last name without the "i." She also filled in a fictitious address in Columbus. The motel's policy was to require guests paying in cash to pay up front an additional $10 refundable at check-out to cover the cost of any long-distance telephone calls charged to the room. Eliopulos paid the additional $10. At least one long distance telephone call, for 16 minutes

beginning at 12:43 a.m., and costing $5.68, was made from the trio's room. By noon on the 17th, the three had left the motel without checking out or obtaining the remainder of the refundable telephone deposit.

On January 17 at approximately 8:30 p.m., a Crisp County sheriff's officer was patrolling Interstate 75 when he observed an automobile travelling northbound faster than the traffic flow in an area with a posted 65 mph limit. Radar clocked the vehicle at 77 mph. The officer pulled the vehicle over. The car's mileage reading reflected that the car had traveled 1,839 miles.

Sowers was driving, Millican was in the front passenger seat and Eliopulos was in the back. Immediately, Sowers appeared to be nervous. She exhibited "a lot of fidgetiness" and was unable to readily produce her driver's license. While writing the speeding citation, the officer asked for the vehicle registration and was told that the car was rented. After looking at the rental agreement, the officer discovered the recentness of the rental and that the renter was not in the vehicle. The officer asked Sowers about the shortness of the trip and she responded that they had been to Hollywood, Florida, to visit a sick relative of Eliopulos. When asked about the car's occupants, Sowers told the officer she did not know "Mike's" (Millican's) last name.

The two women and Millican were standing beside the car. There was a considerable amount of talking and movement among the three. They paced up and down in a small area. They appeared to be "very jittery" and "real apprehensive," their hands shaking and bodies trembling. It was the officer's experience that such nervousness was uncommon for a routine traffic stop and citation for speeding but was the situation when narcotics were present

Because of the absence of the car's renter, the shortness of the trip, and the unusual nervousness, the officer asked for permission to search the car. Both Sowers and Millican agreed to a search. Two small clothing bags were in the trunk. Upon removing the bags and lifting the spare tire cover, the officer observed a black briefcase on top of the spare tire. The officer asked the trio if the briefcase belonged to them and they all stated that it did not and denied having the combination to it. The officer asked the three if there were any objections to his opening the briefcase by whatever means and they all agreed for him to open it. After popping the lock with a screwdriver, the officer found two bags containing a white powdery substance, later identified as nearly two kilograms of cocaine.

Once in custody, Eliopulos told a GBI investigator that the trip had been to visit her sick aunt in Hollywood. She did not know the aunt's address or telephone number. Eliopulos also related that she used to work for "organized crime" in Columbus. Sowers told the same investigator that the journey had been to visit Eliopulos' sick

aunt in Hollywood. She did not know the aunt's name and she too was unable to provide the aunt's location.

" 'The law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.' [Cits.] There is most assuredly a difference between actual and constructive possession even if the difference is only a matter of degree. [Cit.]" *Lockwood v. State*, 257 Ga. 796, 797 (364 SE2d 574) (1988). The two types of possession " ' "often so shade into one another that it is difficult to say where one ends and the other begins." ' " *Heath v. State*, 186 Ga. App. 655, 657 (1) (368 SE2d 346) (1988), quoting with approval *Neal v. State*, 130 Ga. App. 708, 711 (2) (204 SE2d 451) (1974).

OCGA § 16-13-31 (a) (1), as amended effective March 28, 1988, authorizes conviction for trafficking in cocaine upon the showing of constructive possession as well as actual possession. See *Edwards v. State*, 194 Ga. App. 571, 572 (2) (391 SE2d 137) (1990), discussing the statutory change. The largely circumstantial evidence connected Eliopulos and Sowers to *actual* possession of the cocaine. Proof of actual possession may be by circumstantial evidence. *Heath v. State*, supra at 657 (1). The pair's physical presence was not the sole circumstance linking them to actual possession; it was not "mere." The uncontradicted evidence of the entire journey, the stop, and the search added additional inculpatory circumstances; the vehicle was rented to a third party; the long trip with a short turnaround; the three adults stayed together in a pre-determined lodging paid for in cash by one of them, Eliopulos; her falsification of the motel registration; the driving by another of them, Sowers; her unusual nervousness at the initial traffic stop; both women's obvious apprehension as the stop and search unfolded; their vague accounts of visiting a sick relative with an unknown location in another Florida city; Sowers' lack of knowledge of a two-night traveling companion's last name.

The totality of the circumstances supports the finding that both Eliopulos and Sowers not only had knowledge of the drug transport but directly and actively participated in it. See *Holder v. State*, 194 Ga. App. 790, 792 (1) (391 SE2d 808) (1990), discussing the "actual active participation" in possession of the contraband required for "actual possession" in the context of former OCGA § 16-13-31. Moreover, convictions need not rest on showing the women's direct commission of the crime or that either was the primary actor or "moving force," as appellants name him, in order to obtain the convictions. It was sufficient to show that each was a party to the crime. See OCGA § 16-2-20 (b) (1); *Heath v. State*, supra at 657 (1).

Even without Millican's trial testimony, a rational trier of fact would have been authorized to find Eliopulos and Sowers guilty of trafficking in cocaine beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Therefore, the offered post-trial affidavits are not material for the purpose of a new trial analysis on the basis of newly discovered evidence. See *Young v. State*, supra. There was no abuse of the trial court's discretion in denying appellants a new trial on that basis. See *Wilson v. State*, 193 Ga. App. 374, 375 (387 SE2d 642) (1989); *Blankenship v. State*, 162 Ga. App. 538, 539 (292 SE2d 123) (1982); *Allanson v. State*, 158 Ga. App. 77, 78 (1) (279 SE2d 316) (1981).

2. Appellants also contend the trial court erred in denying their pre-trial motion to compel the attendance of Millican's out-of-state roommate, Meier, the renter of the car. They maintain that Meier represented their only chance to rebut and impeach Millican's testimony in what they regard as the State's weak case based completely on Millican's testimony.

OCGA § 24-10-94 (a) et seq. provides the mechanism for compelling the trial attendance of an out-of-state witness. "The party requesting the presence of an out-of-state witness does not have an absolute right to obtain the witness sought under [The Uniform Act to Secure the Attendance of Witnesses From Without the State]. To this end, the statute requires the presentation of enough facts to enable both the court in the demanding state and the court in the state to which the requisition is directed to determine whether the witness should be compelled to travel to a trial in a foreign jurisdiction. OCGA §§ 24-10-92 (a) (b) [cit.], 24-10-94 (a) [cits.]. In order to do this, it must be shown that the witness sought is a necessary and material witness to the case, and the party desiring the witness must carry the burden of establishing those facts. [Cit.]" *Chesser v. State*, 168 Ga. App. 195, 196 (308 SE2d 589) (1983). The court's decision about whether or not to utilize the Uniform Act's provisions and compel the witness' attendance is "purely discretionary." *Ealy v. State*, 251 Ga. 426, 430 (4) (306 SE2d 275) (1983).

First, Eliopulos' and Sowers' factual showing fell short. The motion to compel offered as bases of need for Meier's testimony that it was necessary to authenticate the rental agreement and that it would exculpate the two women by directly conflicting with Millican's statements that they were parties to the trafficking. In support was submitted the affidavit of a defense team attorney who had had a telephone conversation with Meier.

There was no dispute about the fact of the rental and who the renter was as shown by the agreement itself and testimony from the arresting officer. It tended, moreover, to be inculpatory.

As to the other ground of need, the supporting affidavit did not

show that Meier would dispute in any material way Millican's version of events. It merely stated that Meier had related that he and Millican went together to rent the vehicle, that he had rented it at Millican's request because Millican did not have a license, that he knew Millican had been arrested and was jailed but that he did not know the two women arrested with Millican. When informed by the attorney that the firm represented the two women, Meier would not discuss the case further. The materiality, if any, of the anticipated testimony was speculative at best.

Second, contrary to appellants' assertion, Meier was not their only opportunity to rebut Millican's version of events. They could have testified in rebuttal but chose not to do so, as was their right.

Lastly, even if Meier's expected testimony would have rebutted Millican in the manner alleged or discredited his testimony in whole or in part, the remainder of the State's evidence against the two women authorized convictions. Therefore, it cannot be said that Meier was a necessary and material witness. See Division 1, supra.

The trial court did not abuse its discretion in refusing to compel attendance of the out-of-state witness.

*Judgments affirmed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED FEBRUARY 17, 1992 —
RECONSIDERATION DENIED MARCH 9, 1992 — 

*Doffermyre, Shields, Canfield & Knowles, Ralph I. Knowles, Jr., Leslie J. Bryan,* for appellants.

*John C. Pridgen, District Attorney, Kathryn O. Fallin, Assistant District Attorney,* for appellee.