## S92P0854. JOHNSON v. THE STATE.
(422 SE2d 648)

BENHAM, Justice.

This is a case in which a death sentence has been imposed. The defendant, Charles Edward Johnson, was convicted of murder, burglary and theft by taking.[1] Because the trial court refused to allow the

---

[1] The crime occurred on or before April 15, 1989. The defendant was soon arrested. After numerous pretrial hearings, and a change of defense attorneys, trial began on November 16, 1990. The trial concluded on December 3, 1990, and the defendant was sentenced to death the same day. A motion for new trial was filed on December 11, 1990, and denied after hearing on September 7, 1991. New counsel appointed for appeal filed an amended motion for new trial alleging ineffectiveness of trial counsel. This motion was denied after hearing on

defendant to present any evidence at the guilt phase of the trial about his mental condition, we reverse.

1. The victim's body was found in her home on April 15, 1989. After a gun stolen from her home was recovered and traced to the defendant, he was arrested. In due time, counsel was appointed to represent him. On April 20, 1989, counsel filed a motion for a psychiatric examination, which the court granted. A year later, the defendant's original attorney withdrew from the case, and two attorneys were appointed to represent the defendant. The defendant's new attorneys filed a motion seeking funds for an independent psychiatric evaluation. On September 11, 1990, the court granted the motion. In October of 1990, the court authorized a CAT scan of the defendant.

On November 7, 1990, the court authorized the defendant to employ Dr. Dickerson to evaluate him. The evaluation apparently took place on November 15.

The case was called to trial on November 26, 1990, immediately after the Thanksgiving holidays. On the second day of voir dire, the defendant served on the state its notice of intent to raise a mental defense. The state objected and moved to exclude the defense and any evidence thereof, on the ground that the notice had not been timely filed under Rules 31.1 and 31.4 of the Superior Court Rules.

Rule 31.1 provides that

[N]otices of the intention of the defense to raise the issue of insanity or mental illness shall be given and filed at least ten days before trial unless the time is shortened or lengthened by the judge.

Rule 31.4 provides:

(A) Upon the filing of such notice, the judge shall determine from the prosecuting attorney and the defense attorney whether such issue requires any further mental examination of the accused, any further non-jury hearing relative to this special issue, or any specially empaneled jury to determine the issue on the special plea of insanity ahead of trial of the case on the merits.

(B) *Except for good cause shown*, the issue of insanity shall not be raised in the trial on the merits unless notice has been filed and served ahead of trial as provided in these rules. [Emphasis supplied.] [Ga. Ct. Rules & Procedure, pp. 463,

March 18, 1992. The case was docketed in this court on April 13, 1992. After extensions of time were granted to both parties, the case was orally argued on July 1, 1992.

464.]

In response to the state's objection, defense counsel stated that after the court granted the defendant's motion for an independent evaluation, he contacted every psychologist and psychiatrist in town and was unable to find one locally. After locating Dr. Dickerson, additional time was needed to work around Dr. Dickerson's schedule and to arrange the location of the evaluation, which finally took place one week before Thanksgiving. Not until the voir dire began the Monday after Thanksgiving did counsel receive an oral opinion from Dr. Dickerson specifically about the issues of mental illness and mental retardation. Immediately upon learning of a sound basis for a mental defense, defense counsel filed its notice.

The court refused to rule whether defense counsel was dilatory in its investigation of the mental issue. However, the court found that since defense counsel could have filed their notice without waiting for information to support it, no "good cause" was shown for the failure to file the notice ten days before trial, and the court refused to allow the defendant to present any mental issue or evidence at the guilt phase of the trial.

In the circumstances of this case, we hold the trial court abused its discretion by refusing to extend the time allowed for filing the motion.[2]

It is important to note that to the extent the notice provisions of Rules 31.1 and 31.4 operate to

> prevent a criminal defendant from presenting relevant evidence, the defendant's ability to confront adverse witnesses and present a defense is diminished. [*Michigan v. Lucas*, ___ U. S. ___ (111 SC 1743, ___, 114 LE2d 205) (1991).]

Thus, the rules "unquestionably implicate[] the Sixth Amendment." Ibid. That is not to say that rules of exclusion are unenforceable.

> [T]he right to present relevant testimony is not without limitation. The right may in appropriate cases bow to accommodate other legitimate interests in the criminal trial process. [Ibid.] [Internal quotes and cits. omitted.]

The notice requirement of Rule 31.4 undoubtedly serves legitimate state interests in protecting against surprise and undue delay,

---

[2] For purposes of this opinion, we assume, without deciding, that the Rule 31.4 (B) exclusionary provision applies to issues of mental illness and mental retardation as well as to "the issue of insanity" specifically referred to in the rule.

given the state's difficulty in responding to defense psychiatric testimony without its own expert evaluation of the defendant. See *Ingram v. State*, 253 Ga. 622, 636 (323 SE2d 801) (1984). Hence, "failure to comply with [the notice] requirement may in some cases justify even the severe sanction of preclusion." *Michigan v. Lucas*, supra at ___. However, the trial court must consider whether the state's legitimate interests may be satisfied without resort to the preclusion of what might be the defendant's only defense.

Here, the state had ample notice that the defendant's mental condition might be a factor in the case. School records indicate the defendant has had mental problems since childhood. The defendant's original attorney moved for a psychiatric evaluation soon after judicial proceedings were instituted against the defendant. The motion was granted and the defendant was evaluated both by a state mental health expert and later by an independent defense psychologist. A court-authorized CAT scan showed that the defendant had brain damage, possibly from a childhood bout with meningitis. The state was aware of all of the foregoing, and the state's voir dire questions the first day of voir dire demonstrate that the state anticipated some kind of mental-impairment defense.

Thus, the state could not have been completely surprised by the defendant's notice — which, although late, was filed two days *before* the presentation of any evidence. Moreover, there is no indication in this record that "any further mental examination of the accused" would have been necessary, or that any "further non-jury hearing" would have been required, or that a special jury would have to be empaneled. See Rule 31.4 (A), supra.

The record simply does not demonstrate that allowing the defendant to present to the jury evidence that he was mentally ill or mentally retarded would have delayed the trial or compromised the state's ability to respond to the defendant's case. Absent any finding that defense counsel were dilatory in their investigation of the mental issue, or that the notice was filed for the purposes of harassment or undue delay, the trial court should have allowed the defendant additional time to file his notice, as authorized by Rule 31.1. The court's refusal to do so was an abuse of discretion.[3]

2. The record establishes that Dr. Dickerson's testimony could have supported a claim that the defendant was guilty but mentally ill. The state argues that since the defendant was allowed to present Dr.

---

[3] *Hodges v. State*, 257 Ga. 818 (1) (364 SE2d 275) (1988), which the state relies upon to justify the exclusion, is inapposite. There, counsel not only failed to give the required notice, he informed the court both at the trial's outset and during the trial that the defendant was not presenting an insanity defense. Since the proffered evidence was relevant only to an insanity defense, the trial court properly excluded it.

Dickerson's testimony at the sentencing phase, any error in excluding his testimony at the guilt phase is harmless. But exclusion of his testimony from the guilt phase deprived the defendant of a possible guilty-but-mentally-ill verdict. We have held previously that such deprivation is not harmless. *Spraggins v. State*, 258 Ga. 32, 34 (3) (364 SE2d 861) (1988). Therefore, we must reverse.[4]

3. Because the evidence meets the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the case may be retried.

*Judgment reversed. Clarke, C. J., Bell, P. J., Hunt, Fletcher and Sears-Collins, JJ., concur.*

DECIDED NOVEMBER 16, 1992.

*John J. Ossick, Jr., for appellant.*
*Glenn Thomas, Jr., District Attorney, John B. Johnson III, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Mary H. Hines, Staff Attorney, for appellee.*

---

[4] We note, in addition, that absent a mental illness defense, the defendant had little to argue but lack of intent. His lack-of-intent defense — already weak — was eviscerated by the court's jury charge that the "*law* . . . implies" intent to kill from the use of a weapon likely to produce death. As we noted in *Isaacs v. State*, 259 Ga. 717 (35 b) (386 SE2d 316) (1989), such a charge creates an impermissible mandatory presumption concerning intent.