## S96A0311. JOHNSON v. THE STATE.
### (469 SE2d 152)

HUNSTEIN, Justice.

Anthony Johnson was convicted of murder in the shooting death of James Curtis Chatmon III. He appeals from the denial of his motion for new trial.[1] Because we find no error in the trial court's grant of the State's motion in limine regarding expert testimony Johnson sought to admit at trial, we affirm.

1. At the time of the crime, a police officer was surveilling the area through binoculars as a result of information received about Johnson. The officer and a police department dispatcher who was with the officer saw the victim standing on a sidewalk talking to Johnson's brother when Johnson approached and shot the victim several times. Both witnesses testified that the victim was unarmed and had made no threatening gestures towards Johnson. Johnson, after shoot-

---

[1] The homicide occurred on July 9, 1994. Johnson was indicted in August 1994 in Treutlen County. He was found guilty on March 8, 1995 and was sentenced the same day. His motion for new trial was filed on March 23, 1995 and denied on October 10, 1995. A notice of appeal was filed on November 8, 1995. The appeal was docketed in this Court on November 20, 1995. This appeal was submitted for decision without oral argument.

ing the victim in the chest, stood over the victim and continued firing as the victim, prone on his back, tried to drag himself away.[2] Expert testimony established the victim was struck by at least ten shots fired by a semi-automatic weapon. Johnson and the victim were not related and the evidence adduced disclosed no personal history between the two young men.

Johnson testified that the victim had been arguing with his brother and that Johnson thought they were about to fight, so he left his brother's apartment, retrieved his gun which was outside on a car bumper and checked to see if it was loaded, firing one shot into the ground; that as he neared, the victim said "I'll get you" and turned, appearing to have a chrome object in his hand; and that Johnson, thinking the object was a gun, fired at the victim.

We find the evidence adduced sufficient to enable a rational trier of fact to find Johnson guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his sole enumeration of error, Johnson contends the trial court erred by granting the State's motion in limine regarding testimony by Dr. Robert Schaeffer, a clinical psychologist. At the hearing on the motion, Dr. Schaeffer testified that as a result of his testing and interviews with Johnson, he found Johnson to be mildly mentally retarded and to have been physically abused as a child. Dr. Schaeffer opined that Johnson has "some psychological symptoms that we might consider to be similar to post-traumatic stress disorder," explaining that Johnson's actions were "activated and driven by the same psychological dynamics" as those in the battered woman syndrome. Although Dr. Schaeffer gave his opinion as to the causes for Johnson's explosive rage and fear, those causes were not in any way connected to Johnson's relationship with the crime victim. In its oral ruling, the trial court found the proffered expert testimony irrelevant, noting in particular the fact that the evidence showed that the victim of the crime was an unrelated third party and thus not in the same category as a batterer.[3]

Johnson asserts that the trial court's ruling was error because Dr. Schaeffer's expert testimony provided relevant information which was beyond the ken of the jury, namely, a psychological explanation for Johnson's explosive rage and fear which led to his unprovoked killing

---

[2] Upon the firing of the first shot, the police officer immediately ran toward the crime scene, which was over 100 yards away, while radioing for assistance. Although the officer drew his own weapon, he could not use it due to darkness (it was approximately 11:00 p.m.) and the presence of numerous other individuals in the area.

[3] The trial court made no determination whether the post-traumatic stress syndrome had reached a scientific stage of verifiable certainty so as to become competent evidence under *Harper v. State*, 249 Ga. 519 (1) (292 SE2d 389) (1982), and we intimate no opinion in that regard.

of an unarmed man. In support of this argument, Johnson relies on *Smith v. State*, 247 Ga. 612 (277 SE2d 678) (1981). In *Smith*, the defendant was charged with murdering her live-in boyfriend. The defense proffered an expert's testimony about the battered woman syndrome and the expert's opinion that the defendant's behavior conformed to that syndrome. This Court held that the proffered testimony was admissible because it supplied "an interpretation of the facts which differ[s] from the ordinary lay perception," id. at 619, and it explained why a person suffering from the syndrome "would not leave her mate, would not inform police or friends, and would fear increased aggression against herself." Id. Thus, pursuant to *Smith*, the courts of this State recognize that

> under appropriate circumstances a woman who kills her husband or boyfriend and raises the defense of self-defense may, as evidence of whether she acted in fear of her life, have an expert witness describe the "battered woman syndrome," apply that model to the facts, and conclude that the woman falls within the profile. [Cit.]

(Footnote omitted.) *Sanders v. State*, 251 Ga. 70, 74 (303 SE2d 13) (1983).

The battered woman syndrome describes "a series of common characteristics that appear in women who are abused physically and psychologically over an extended period of time by the dominant male figure in their lives." *State v. Kelly*, 478 A2d 364, 371 (N.J. 1984). A summary of the battered woman syndrome is set forth in *State v. Kelly*, particularly the three-phase "battering cycle" that develops in abusive relationships[4] and the state of psychological paralysis into which some women descend.[5] Id. This Court's conclusion in *Sinns v. State*, 248 Ga. 385 (3) (283 SE2d 479) (1981) that the battered woman syndrome is a "complex subject" is supported by a review of the "sustained psychological and physical trauma com-

---

[4] The "battering cycle" consists of three phrases: the "tension-building" stage in which minor abusive episodes occur and the woman attempts to be as placating and passive as possible to avoid more serious violence; the "acute battering" stage in which explosive violence occurs; and the "contrition" stage in which the batterer asks for forgiveness and makes promises, such as to seek help and to refrain from further violence. *State v. Kelly*, supra at 371.

[5] This "theory of learned helplessness" posits that as a result of the abusive relationship, a woman comes to believe that her own behavior does not have any relationship to whether she is beaten. Moreover, because she is unable to predict or control the violence, a battered woman may come to feel demoralized and paralyzed, and thus unable to take any action to improve or alter her situation.

(Footnotes omitted.) Note, "Developments in the Law, Legal Responses to Domestic Violence," Section V, Battered Women Who Kill Their Abusers, 106 Harvard L. Rev. 1498, 1579 (1993).

pounded by aggravating social and economic factors" that comprise the battered woman syndrome. *State v. Kelly*, supra at 372.

The battered woman syndrome itself is clearly not applicable to Johnson. See generally *Pruitt v. State*, 164 Ga. App. 247 (1) (296 SE2d 795) (1982). Johnson argues, however, that because his expert would testify that Johnson's actions were driven by the same psychological dynamics as those in the battered woman syndrome, the rationale in *Smith* for the admission of expert testimony on the battered woman syndrome should be applied to his case. We do not agree. Our holding in *Smith v. State*, supra, was the result of a need to treat a complex area of human response and behavior. *Sinns*, supra at 387. The facts in this case are not comparably compelling and we are not persuaded by Johnson that there was a need for expert testimony in his case for any of the reasons that led this Court in *Smith* to allow such testimony regarding the battered woman syndrome.

OCGA § 16-3-21 (a) provides that "[a] person is justified in threatening or using force against another when and to the extent that he *reasonably believes* that such threat or force is necessary to defend himself . . . against such other's imminent use of unlawful force." (Emphasis supplied.) While in those unique factual scenarios giving rise to the battered woman syndrome, expert testimony may be necessary to "attempt to show that the defendant had a mental state necessary for the defense of justification," *Chapman v. State*, 259 Ga. 706, 708 (386 SE2d 129) (1989), our holdings in regard to the admissibility of evidence of the battered woman syndrome have not otherwise changed the rule in homicides where justification is raised as a defense, namely, that justification is based upon the fears of a reasonable person, not upon the reasonable fears of the defendant. *Moore v. State*, 228 Ga. 662 (6) (187 SE2d 277) (1972).

Therefore, because Johnson's proffered expert testimony was not relevant to the jury's consideration of Johnson's justification defense, OCGA § 16-3-21 (a), the trial court did not err by granting the State's motion in limine.

*Judgment affirmed. All the Justices concur, except Sears, J., who concurs in the judgment only.*

DECIDED APRIL 29, 1996.

*Joe H. Thalgott,* for appellant.
*Ralph M. Walke, District Attorney, Jeffrey J. Connor, Assistant District Attorney, Michael J. Bowers, Attorney General, Wesley S. Horney, Assistant Attorney General,* for appellee.