### S96A1152. SELMAN v. THE STATE.
(475 SE2d 892)

HINES, Justice.

Stanley Selman appeals his convictions for malice murder and possession of a firearm during the commission of murder in connection with the fatal shooting of James Williams.[1] We affirm.

---

[1] The crimes were committed on April 24, 1994. Selman was indicted for malice murder and possession of a firearm during the commission of murder on August 16, 1994. He was tried before a jury on February 27, 1995 through March 3, 1995 and found guilty of both charges. On March 6, 1995, Selman was sentenced to life imprisonment for the murder and five consecutive years of incarceration for the possession of firearm charge. His motion for new trial was filed March 14, 1995, amended on February 5, 1996, and denied on February

The evidence, viewed in favor of the verdict, revealed that on the afternoon of April 24, 1994, Selman went to the home of his longtime friend, Ms. Kilgore. Kilgore had been dating Williams for about two years, and Williams often stayed at Kilgore's house. Selman and Williams had gotten along with each other but prior to April 24, Selman began to act hostilely toward Williams. He also began behaving in an unusual manner toward Kilgore. The week before, Selman called Kilgore and told her that he loved her. Kilgore arrived at work on April 22 to find Selman and police and security guards waiting for her in the parking lot. Selman embraced Kilgore and said that he thought she might be hurt. After the police left, Kilgore saw Selman unloading a rifle by his truck. Selman commented to Kilgore that she would be moving from her residence and that he would marry her tomorrow if needed. That evening while Williams was at work, Selman came to Kilgore's home and told her that he had dreamed that she was going to be killed and that Williams was bad and a "wife beater." Selman left after asking Kilgore if she could live without Williams.

When Selman arrived at Kilgore's home on April 24, he was carrying his handgun in its case and a Bible. While Kilgore was answering a telephone call, Selman called Williams to the back of the house. Williams had been doing laundry and was carrying a jacket on a clothes hanger as he went to find Selman. Selman shot Williams in the buttocks from approximately three feet behind. As Williams spun around facing Selman, Selman shot him two more times. One bullet grazed Williams' forearm and then penetrated his heart. The other round passed through Williams' hand to his shoulder. As Williams lay on the floor, Selman fired a final close range shot to Williams' head.

Selman stated to the first officer arriving on the scene, "I did it. I shot him. Then I called you." As another officer attempted to read Selman his *Miranda*[2] rights, Selman said, "You don't have to read me my rights. I did it. I'll take what's coming to me." Selman explained to the police that he had planned to kill Williams on the prior Thursday but had not because Kilgore's children were home. Selman appeared to be calm and apologetic. Later, Selman gave police a lengthy videotaped statement in which he repeatedly admitted murdering Williams.

1. The evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Selman did not act with provocation or justification in shooting Williams and that he was guilty of

9, 1996. The notice of appeal was filed on March 5, 1996, and the appeal was docketed in this Court on April 15, 1996. The case was submitted for decision following oral argument on June 18, 1996.

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

malice murder and possession of a firearm during its commission. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The contention that the trial court erred in admitting into evidence Selman's inculpatory statements to officers at the scene because they were made prior to his being given *Miranda* warnings fails. The statements did not result from an in-custody interrogation, as they must in order to invoke *Miranda*. *Thomas v. State*, 243 Ga. 217, 218 (1) (253 SE2d 190) (1979).

3. Selman was given funds for an independent psychological evaluation and retained psychologist Stark. At trial, the State questioned the admissibility of Stark's testimony because Selman was not contesting his competency to stand trial nor seeking an insanity defense or a verdict of guilty but mentally ill. Selman's counsel stated the defenses were justification and a lack of malice or intent. He argued that the evidence of Selman's paranoia and fear of the victim was relevant to the issue of malice or intent and relevant because the case was like a battered woman syndrome case. The court granted the State's request for a proffer of testimony, and following the proffer, ruled the testimony inadmissible. In three separate enumerations of error, Selman challenges the exclusion of Stark's testimony, but the challenge fails.

It was not error to refuse the testimony on the basis that it was admissible to show Selman's lack of intent or malice at the time of the shooting. Selman rejected defenses of insanity or that he was mentally ill at the time of the shooting; therefore, the evidence was irrelevant to the state of mind necessary to determine guilt. *Wallace v. State*, 248 Ga. 255, 262 (8) (282 SE2d 325) (1981).

Nor was Selman entitled to admission of the psychologist's testimony on the ground that his case was essentially a battered woman syndrome case. The battered woman syndrome is complex and involves " 'a series of common characteristics that appear in women who are abused physically and psychologically over an extended period of time by the dominant male figure in their lives.' [Cit.]" *Johnson v. State*, 266 Ga. 624, 626 (2) (469 SE2d 152) (1996). This is in no manner a battered woman syndrome case.[3] What is more, the syndrome does not stand as a separate defense but rather is evidentiary support for a claim of justification. OCGA § 16-3-21 (d). See *Motes v. State*, 192 Ga. App. 302, 304 (4) (384 SE2d 463) (1989). Even though OCGA § 16-3-21 (d) (2) provides for the admissibility of relevant expert testimony regarding the condition of the mind of a

---

[3] During the proffer, Dr. Stark acknowledged that there were "not a whole lot" of similarities between any feelings of fear on the part of Selman towards the victim and that of a battered woman.

defendant in a situation of abuse,[4] it has "not otherwise changed the rule in homicides where justification is raised as a defense, namely, that justification is based upon the fears of a reasonable person, not upon the reasonable fears of the defendant. [Cit.]" *Johnson,* supra at 627 (2).

Lastly, the claim that it was error not to allow the psychologist to testify that Selman was "paranoid, psychotic and delusional" at the times he made the oral and videotaped statements to police is unavailing. Selman did not raise this issue before the trial court in offering the testimony; therefore, it is not properly considered for the first time on appeal. *Prince v. State,* 257 Ga. 84, 86 (3) (355 SE2d 424) (1987). Moreover, the court at the *Jackson-Denno*[5] hearing had the opportunity to observe Selman testify,[6] and the jury was able to view for itself Selman's condition during the videotaped statement.

4. The contention that the trial court erred by failing to include in its jury charge on voluntary manslaughter Selman's requests regarding provocation and "words, threats, and menaces" is without merit.[7] In order for the failure to give a requested instruction to be reversible error, the refused request must be a correct statement of the law, pertinent and material to the case, and not substantially covered in the charge actually given. *Carter v. State,* 263 Ga. 401, 403 (4) (435 SE2d 42) (1993). All these factors are absent here. The evidence fell well short of showing provocation for the killing; therefore, the trial court was not obligated to instruct on voluntary manslaughter and its decision to do so was gratuitous. Moreover, Selman's requests to charge were less than accurate statements of the law. Finally, the concept of provocation by threat or menace was substantially contained in the charge given.

5. The challenges to the trial court's refusal to give requested instructions on justification and the definition of "forcible felony"

---

[4] Stark opined that Selman's fear and paranoia stemmed from a history of neglect and abuse, but gave no factual basis for the opinion.

[5] *Jackson v. Denno,* 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[6] Selman denied making the inculpatory oral statements to police.

[7] The three requested charges were:

The defendant's fear of some danger can be sufficient provocation to excite the passion necessary for voluntary manslaughter (as that offense has been defined by the court). [Request #27]

The defendant's fear that he was in some danger, may in some circumstances, be sufficient provocation to excite the passion necessary for voluntary manslaughter (as that offense has been defined by the court). [Request #28]

The defendant's fear that he was in danger of an offense less than a felony, may in some circumstances, be sufficient provocation to excite the passion necessary for voluntary manslaughter (as that offense has been defined by the court). [Request #29]

fail.[8] The requests were either not adjusted to the evidence or substantially covered in the court's charge. See Division 4, supra.

6. Lastly, Selman is unsuccessful with the complaint that the trial court committed reversible error in failing to give his request to charge the suggested pattern instruction on conflicts in testimony.[9] Selman did not testify and has failed to demonstrate that there were any conflicts which would have warranted the charge. Moreover, the trial court adequately instructed the jury on assessing the credibility of witnesses, including making any determination of impeachment. See Divisions 4 and 5, supra.

*Judgments affirmed. All the Justices concur, except Sears, J., who concurs in the judgment only as to Division 3.*

DECIDED SEPTEMBER 23, 1996 —
RECONSIDERATION DENIED OCTOBER 17, 1996.

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer, Gregory E. Lundy,* for appellant.

*Daniel J. Porter, District Attorney, Tracy R. Aronovitz, Assistant District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.

---

[8] The requests at issue were:

A person is justified in threatening or using force against another person when, and to the extent that, he/she reasonably believes that such threat or force is necessary to defend himself/herself or a third person against the other's imminent use of unlawful force. A person is justified in using force which is intended or likely to cause death or great bodily harm only if that person reasonably believes that such force is necessary to prevent death or great bodily injury to himself/herself or a third person or to prevent the commission of a forcible felony.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. [Request #16]

A person is not justified in using force, if that person:

a. Initially provokes the use of force against himself/herself with the intent to use such force as an excuse to inflict bodily harm upon the assailant; or

b. Is attempting to commit, committing, or fleeing after the commission or attempted commission of a felony; or

c. Was the aggressor or was engaged in a combat by agreement, unless the person withdraws from the encounter and effectively communicates his/her intent to withdraw to the other person, and the other person still continues or threatens to continue the use of unlawful force. [Request #17]

OCGA § 16-3-20. [Request #13]

[9] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Part 2, § F (2nd ed. 1991).