## A99A1900. PORTER v. THE STATE.
(532 SE2d 407)

SMITH, Judge.

Andrea Lee Porter was indicted jointly with her husband, Thomas Porter, on charges stemming from the abuse of Andrea Porter's son. The son, who was then four years old, was living with his natural father and visiting his mother and her husband for a thirty-day summer visitation. Thomas Porter was charged with aggravated child molestation, aggravated sexual battery, and aggravated battery. They were charged jointly with two counts of cruelty to children and contributing to the deprivation of a minor. They were tried jointly, and a jury found both Porters guilty on all charges.

Thomas Porter admitted the abuse. He testified that he accidentally burned the child's leg with an iron while he was ironing his military uniforms and beat him "off and on" with his hands, his fists, and a pillow from the time the visitation began. He also testified that he burned the child's anus, rectum, and scrotum with a hot curling iron several times; that he hit him in the stomach, head, and penis; and that he choked him "until his eyes started to roll back" before releasing him. Thomas Porter is not a party to this appeal. Andrea Porter (hereinafter "Porter") appeals from the judgment entered on the jury's verdict, raising five enumerations of error. We find that the evidence was sufficient to support her convictions, that her trial counsel provided effective assistance, and that the trial court did not err in admitting evidence of similar transactions or allowing improper cross-examination of Porter's character witnesses, as alleged by Porter. We conclude, however, that it was error to exclude the testimony of a psychologist regarding Porter's behavior and that this error was not harmless. Porter must therefore be retried.

1. Porter contends the evidence was insufficient to support her convictions for cruelty to children and contributing to the deprivation of a minor.

(a) OCGA § 16-5-70 (b) provides that cruelty to children in the first degree is committed when one "maliciously causes a child under

the age of 18 cruel or excessive physical or mental pain." Count 4 of the indictment charged Porter, along with her husband, with cruelty to children for maliciously causing her son "cruel and excessive physical and mental pain by striking [him] on the legs, feet and back, and burning said child with a candle." Although Porter correctly points out that no evidence presented at trial showed that the child was burned with a candle, it was not necessary that the State prove that the boy was injured in every way set forth in the indictment; these details were merely descriptive of the offensive act. *Cole v. State*, 162 Ga. App. 353, 354 (2) (291 SE2d 427) (1982).

A person is a party to a crime,

> only if he [or she]: (1) Directly commits the crime; (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

OCGA § 16-2-20 (b). The State was therefore required only to prove either that Porter abused her son herself or that she was a party to her husband's abuse of him.

This the State accomplished. First, the victim's father testified that the child told him that the damaging abuse was inflicted by both Porter and her husband and that Porter "slapped and hit" him. This alone was sufficient to support Porter's conviction on Count 4.

Second, the State presented evidence that authorized the jury to find that Porter was a party to the crime committed by her husband. Porter's husband testified that the abuse began on a Monday and continued until Thursday, when the child lost consciousness and stopped breathing. At that time Porter's husband called her, and she left work, rushed home, and transported the child to the hospital. The State presented expert evidence that the rectal injury would have affected the victim's walking and prevented him from sitting down. According to Porter's husband, this injury occurred one day before the victim was taken to the hospital; according to the doctor who examined the child at the hospital, it occurred two or three days earlier. The medical evidence also showed that the child had a five-inch burn on his left leg, which was several days old. Porter's husband admitted that the abuse had been going on for two or three days. Yet incredibly, Porter testified that she saw her son every evening when she returned from work and that she never noticed anything wrong. She noticed only a small burn from the iron on her son's

leg, even though she swam with the children Wednesday afternoon and cuddled with them that evening.

Further, the State presented the testimony of witnesses from Porter's workplace indicating that Porter was aware of the abuse. Co-workers testified they heard Porter talking to her husband on the telephone Thursday morning, telling him that his form of discipline was child abuse and that she would not tolerate it. She was aware that her husband had been abused as a child himself. But even though she knew her husband was frustrated with the boy and might do something she considered child abuse, she did not leave work and go home. The evidence therefore also supports Porter's conviction on Count 4 as a party to the crime committed by her husband.

(b) Count 5 of the indictment charged Porter with maliciously causing her son cruel and excessive physical and mental pain by failing to take him for necessary medical treatment. Porter argues that no evidence was presented that such treatment was necessary before the child stopped breathing, at which time it is undisputed that she rushed home and brought him to the hospital. OCGA § 16-5-70 (b). We do not agree. The State presented overwhelming evidence that the abuse inflicted on Porter's son took place over a period of several days, during which time Porter was present and in close contact with the victim each and every evening. The State also presented evidence that the child's suffering would have been obvious, simply because of the nature of his injuries. A doctor testified that the child's injuries would have been extremely painful to him unless he was unconscious. Yet Porter did nothing to alleviate the child's suffering until he stopped breathing.

(c) Porter argues that Count 6 is simply "a rehashing" of Count 5 and the two counts should have merged. We find no merit in this argument. Count 5 is a crime against the person, requiring proof that Porter caused her son unnecessary pain. Count 6 charged Porter with causing her son to be deprived within the meaning of OCGA § 15-11-2 (8) by depriving him of care necessary for his physical health. It is an offense against health and morals; it requires no showing of cruel or excessive pain but instead requires a showing of deprivation within the meaning of OCGA § 15-11-2. Although the two charges are based on similar facts, they have differing elements, and each requires proof of a fact not required to prove the other. *Olsen v. State*, 191 Ga. App. 763, 764-765 (1) (382 SE2d 715) (1989). The jury was therefore authorized to find Porter guilty of both. On each of these counts, the evidence was sufficient to authorize the jury to find Porter guilty beyond a reasonable doubt under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Porter contends the trial court improperly permitted the vic-

tim's father to testify over objection that after prior visits to Porter, the child had returned home bearing various minor injuries. Porter characterizes this as similar transaction evidence and argues that it was inadmissible because the State failed to give prior notice, as required by Uniform Superior Court Rule 31.3. The Supreme Court of Georgia indeed so held in *Loggins v. State*, 260 Ga. 1 (388 SE2d 675) (1990) and *Maxwell v. State*, 262 Ga. 73, 74-75 (2) (414 SE2d 470) (1992). These cases, however, were overruled in *Wall v. State*, 269 Ga. 506 (500 SE2d 904) (1998), which held that the rule was not applicable to occurrences categorized as prior difficulties between defendant and victim. The rationale in *Wall* is that a defendant's prior acts toward the victim are admissible as evidence demonstrating motive, intent, or bent of mind toward the victim, thereby establishing "a logical, probative connection between the crime charged and the prior difficulty. [Cit.]" Id. at 509. Because the relationship between the defendant and the victim is usually relevant, it is not surprising that the nature of that relationship is subject to proof at trial. Id. at 510 (Fletcher, P. J., concurring specially). What is required, however, is that the trial court instruct the jury that the evidence is admitted for a limited use. Id. at 509. In this case, that was done. The jury immediately received an instruction that the evidence was admitted for the limited purpose of showing, as the trial court put it, "the relationship between the victims, alleged victims, and the defendant and to show the defendants' motive, intent, bent of mind in committing the alleged acts against the victim." The trial court also told the jury to consider the evidence only for that purpose and no other purpose. We therefore find no error.[1]

3. Porter maintains the trial court erred in allowing improper cross-examination of her character witness. Porter called as a character witness an attorney with the Legal Assistance office at Fort Benning, where she had been employed. On direct examination, the witness was asked the statutory questions regarding knowledge of character. See OCGA § 24-9-84. The State then cross-examined the witness, asking him if he had heard that Porter's son had bruises when he returned to his father from visits with Porter, that her son did not want to visit Porter, that Porter was more interested in the welfare of her husband than that of her son after bringing him to the hospital, and that she told another co-worker that her husband had himself been abused as a child and that she was going to stick by him. The State also asked the witness whether he had personal knowledge of Porter beating the child or allowing her husband to

---

[1] We note, however, that some testimony was presented regarding statements made by Porter's daughter regarding the abuse of her brother. Because any such testimony is hearsay, it should not be admitted upon retrial.

beat him. The defense objected to these questions, and the objection was overruled. "Once a defendant opens the door for character evidence, specific events may be used in testing the extent and foundation of the [witness's] knowledge and the correctness of his testimony on direct examination." (Citations and punctuation omitted.) *Morrison v. State*, 232 Ga. App. 846, 847 (502 SE2d 470) (1998). See also *Banks v. State*, 113 Ga. App. 661 (1) (149 SE2d 415) (1966). This was the procedure used by the State, and we find no error.

4. Porter alleges that she received ineffective assistance of counsel. She argues that trial counsel's presentation of this character witness was "disastrous" and that he failed to present other witnesses who could have testified to Porter's good character or examine Porter on this subject.

To prevail on a claim of ineffective assistance of counsel, it must be shown both that counsel's performance was deficient and that but for this deficiency the outcome of the trial would have been different. A strong presumption exists that trial counsel performed within the wide range of reasonable professional assistance. *Davis v. State*, 238 Ga. App. 84, 89 (7) (517 SE2d 808) (1999). The trial court's determination that Porter was afforded effective assistance of counsel will not be reversed on appeal unless it was clearly erroneous. *McCant v. State*, 234 Ga. App. 433, 436 (3) (506 SE2d 917) (1998).

Although trial counsel asked the witness only three of the four statutory questions regarding character, counsel for Porter's husband and co-defendant posed the fourth statutory question. The fact that trial counsel did not ask the fourth question himself could not have materially affected the outcome of the trial. Trial counsel testified at the hearing on the motion for new trial that he interviewed but did not call the other witnesses for various strategic reasons. Although Porter claims it was ineffective assistance not to bring out the fact that she had been awarded several Army commendation medals, trial counsel testified that having been in the Army himself, he knew that these medals were not necessarily evidence of exemplary conduct or good character. He also was aware that Porter did not have a spotless military record, having learned from a former commanding officer that she had been reprimanded for causing a disturbance in a theater when she worked for him. The trial court found that trial counsel had provided effective assistance.

> The decision as to which defense witnesses will be called is a matter of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel. The fact that appellant and . . . present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant

received representation amounting to ineffective assistance of counsel.

(Citations and punctuation omitted.) *McCant*, supra.

5. Porter contends the trial court erred in excluding the testimony of a psychologist concerning her behavior.

Before trial, the State moved in limine to prevent the defense from calling Dr. Ellen Speyer, a licensed clinical psychologist, whose report was tendered to the court before the trial. The State intertwined two arguments for excluding the evidence: that the evidence was inadmissible because of its psychological nature, the defense having given no notice of an insanity defense; and that the testimony went to the ultimate issue, which was in the province of the jury and not a proper area for expert opinion. The trial court granted the motion to exclude the testimony.

In an offer of proof outside the presence of the jury, Dr. Speyer testified that she evaluated Porter at the request of the Army, which was considering a possible court martial. She administered various psychological tests and submitted her report to the Army. Summarizing the results of her evaluation, Dr. Speyer testified that Porter's personality "is centered around the whole ability to be able to block out things that she doesn't want to see" and that "her whole psychological makeup is almost designed to not see things that are too painful to see." The doctor testified that this usually happens when one is subjected to some type of abuse or severe emotional distress as a child. She could not say whether Porter actually was herself subjected to such abuse, but she stated that generally that is how such mechanisms are formed.

Porter's counsel then argued that Porter's defense was that she had no knowledge of the abuse her husband was inflicting on her son. He argued that the psychologist's testimony and report were admissible to show that in her expert opinion Porter was not aware of the signs and symptoms of the abuse, even though a normally perceptive person would have been aware. His argument was that such evidence was admissible, just as evidence of a vision impairment or other sensory difficulty would be admissible, not as evidence of diminished mental capacity but as evidence of impaired perception. The court again found the evidence inadmissible.

Dr. Speyer's report, which is included in the record although not given to the jury, recites that:

just as a hysterically blind person has nothing in fact wrong with their eyesight, but they do not allow themselves to be aware of visual information and function "as if" blind for the most part, so Andrea Porter functions as if blind of the

events going on around her if they are too threatening, frightening, or painful. It is my clinical conclusion that she is capable of actually not seeing signs of physical abuse between her husband and her children, even if those signs appear to most people to be too obvious or large to ignore. It is as if her entire personality structure is specifically designed to make her blind to such things.

Relying upon *Pyron v. State*, 237 Ga. App. 198 (514 SE2d 51) (1999) (physical precedent only) and *Loper v. Drury*, 211 Ga. App. 478 (440 SE2d 32) (1993) (physical precedent only), the State argues that because no evidence was presented of any childhood abuse administered to Porter, Dr. Speyer's testimony lacks a factual basis and the trial court correctly excluded it. But in *Pyron*, we found that the trial court actually abused its discretion in excluding expert evidence regarding proper techniques for interrogating children. And in *Loper*, we acknowledged the rule that generally expert witnesses may not base their opinions on facts not within the expert's personal knowledge and not otherwise admitted into evidence. Id. at 481 (1) (b). But we also recognized that a number of exceptions exist to this rule, including those for "scientific works and other learned sources of information pertaining to the expert's profession. [Cits.]" Id. at 482 (1) (b). In *Loper*, the expert's reliance upon a letter not admitted into evidence did not come within any of these exceptions. But here, Dr. Speyer was undoubtedly relying upon learned sources from her profession in stating that a certain psychological characteristic commonly is found in persons who were abused as children. As such, it was not excludable on this basis.

Moreover, Dr. Speyer did not testify she concluded that Porter's condition was the result of childhood trauma, for which conclusion no factual basis was presented. She had a strong factual basis, in the testing she administered and her interview with Porter, for the conclusion to which she testified: that Porter exhibited symptoms of a psychological condition in which she blocked out and essentially denied excessively painful phenomena.

Neither was Dr. Speyer's testimony inadmissible as going to the ultimate issue of whether Porter did have knowledge of her husband's abuse. "It is well settled that an expert may give an opinion or conclusion even on the ultimate issue when that conclusion is beyond the ken of the average layman. [Cit.]" *Beecher v. State*, 240 Ga. App. 457, 458 (2) (523 SE2d 54) (1999). In this case, it is clear that the jury would have no way of reaching a conclusion on this issue without the testimony of the expert.

Finally, this issue does not relate to an insanity defense. It has to do with the presentation of psychological evidence that falls short

of being an insanity defense. USCR 31.1 provides that "notices of the intention of the defense to raise the issue of insanity or mental illness . . . shall be given and filed at least ten [10] days before trial unless the time is shortened or lengthened by the judge." In addition, USCR 31.4 (B) provides: "Except for good cause shown, the issue of insanity shall not be raised in the trial on the merits unless notice has been filed and served ahead of trial as provided in these rules." In *Johnson v. State*, 262 Ga. 527, 529 (422 SE2d 648) (1992), the Supreme Court said:

> It is important to note that to the extent the notice provisions of Rules 31.1 and 31.4 operate to prevent a criminal defendant from presenting relevant evidence, the defendant's ability to confront adverse witnesses and present a defense is diminished. Thus, the rules unquestionably implicate the Sixth Amendment. That is not to say that rules of exclusion are unenforceable. The right to present relevant testimony is not without limitation. The right may in appropriate cases bow to accommodate other legitimate interests in the criminal trial process. The notice requirement of Rule 31.4 undoubtedly serves legitimate state interests in protecting against surprise and undue delay, given the state's difficulty in responding to defense psychiatric testimony without its own expert evaluation of the defendant. Hence, failure to comply with the notice requirement may in some cases justify even the severe sanction of preclusion. However, the trial court must consider whether the state's legitimate interests may be satisfied without resort to the preclusion of what might be the defendant's only defense.

(Citations and punctuation omitted.) Id. at 529-530 (1). In *Johnson*, the Supreme Court held that the State was not completely surprised by the psychological testimony, and the record did not demonstrate that permitting the excluded evidence would have worked to delay the trial or compromised the State's ability to respond. Id. at 530.

Here, too, the State could not have been completely surprised by the psychological testimony, as it moved in limine to exclude it. And in this case, we are persuaded that excluding the evidence did preclude Porter's only defense. Given these factors, and the fact that the testimony did not present an insanity defense but offered an expert's opinion on an issue beyond the ken of the jury, we conclude that the trial court abused its discretion in refusing to admit the evidence. Porter must be retried.

*Judgment reversed. Pope, P. J., and Miller, J., concur.*

## On Motion for Reconsideration.

On motion for reconsideration the State makes a number of arguments seeking to persuade this court that our reversal of Porter's conviction was misguided. Because several of these arguments have superficial appeal and the State advocates its position persuasively, we take this opportunity to note that we have carefully considered the arguments raised and to expand on our reasoning regarding several of these points.

First, the State contends we have overlooked the Supreme Court's decisions in *Selman v. State*, 267 Ga. 198 (475 SE2d 892) (1996) and *Lewandowski v. State*, 267 Ga. 831 (483 SE2d 582) (1997). Contrary to the State's contention, we considered these cases carefully and concluded that they did not demand the result desired by the State under the facts present here. It is true that in both cases the Supreme Court held it was not error to refuse to admit psychological testimony proffered by the defendant after he initially rejected defenses of mental illness or insanity. But in both cases, the particular facts involved in the defense raised rendered the defendant's unique psychological condition irrelevant because his conduct was required to be judged by a "reasonable man" standard. Selman was charged with malice murder. He sought to introduce expert psychological testimony to show his lack of intent or malice at the time he shot the victim, arguing that his fear of the victim made the case "like a battered woman syndrome case." *Selman,* supra at 200 (3). But the offer of proof itself showed that very little similarity existed between Selman's feelings and those of a battered woman. Id. at 200, n. 3. And the Supreme Court noted that Selman's defense was in the nature of a justification defense and:

> [although] OCGA § 16-3-21 (d) (2) provides for the admissibility of relevant expert testimony regarding the condition of the mind of a defendant in a situation of abuse, it has not otherwise changed the rule in homicides where justification is raised as a defense, namely, that justification is based upon the fears of a reasonable person, not upon the reasonable fears of the defendant.

(Citations, punctuation and footnote omitted.) Id. at 200-201 (3).

The same is true of *Lewandowski*, supra. There, the defendant was charged with malice murder. He sought to show that his crime was really voluntary manslaughter. His defense was that the victim provoked him by committing adultery and the psychological and emotional impact upon him caused him to kill her. He sought to introduce expert psychological testimony, claiming it was necessary

for the jury to understand his state of mind. The Supreme Court held that the defendant's state of mind was irrelevant, because voluntary manslaughter required the jury to decide whether the provocation was sufficient to excite deadly passion in a reasonable person, not in this particular defendant. Id. at 832.

In this case, no "reasonable man" standard is involved. Instead, to prove that Porter was a party to causing her son unnecessary pain and depriving him of medical treatment, it was necessary that the State show that she knew her son suffered such pain and required medical treatment.[2] The State offered evidence that a reasonable person would have known. Porter's sole defense was this compelling psychological testimony, based upon valid psychological testing commissioned by the Army, that she suffered from a, psychological condition that impaired her knowledge and perception of such painful facts that might be obvious to others. Her psychological condition was not irrelevant, as in *Selman* and *Lewandowski*; it was crucial to her defense.

We certainly agree with the State that psychological testimony must usually be excluded when the defendant has not given notice of reliance upon an insanity defense. But as the Supreme Court noted in *Johnson v. State*, 262 Ga. 527 (422 SE2d 648) (1992), the rules of exclusion that normally bar such testimony when the defendant has rejected an insanity defense must yield when other legitimate interests demand admission of the evidence. This is just such a case. Given the State's lack of surprise and the crucial nature of the evidence, under these particular facts it should have been admitted.

Second, we cannot agree with the premise upon which most of the State's argument depends: that the issue of Porter's knowledge is really an issue of intent. The State cites five cases to support the proposition that "[t]his court has often indicated that the questions of knowledge and intent are closely linked." All but one of these cases do not support the State's proposition. And the remaining case, *Callaway v. State*, 230 Ga. App. 369, 370-371 (2) (496 SE2d 349) (1998), although closer, does not state that knowledge and intent are always identical. They are not. In this case, the State was certainly required to prove Porter's general criminal intent to harm her son. In addition, however, because of the nature of several of the crimes with which she was charged and because her husband admitted that he was the perpetrator of the crimes in that he beat and burned Porter's son, the

---

[2] The State makes much of testimony that Porter was aware of her husband's abuse because she was overheard telling him on the telephone that his form of discipline was child abuse and that he should not abuse the children anymore. But Porter testified and explained these overheard statements. She testified that the phone calls related to her awareness that her husband was placing her son in warm and cold baths, of which she did not approve.

State was required to show that Porter had knowledge of her husband's actions. That is very different from criminal intent. It was for the jury to decide whether Porter had the requisite knowledge, but it was important that their decision be made upon all the facts. If, indeed, Porter suffered from a psychological condition that caused her not to become aware of painful facts, the only way the jury could know about such a condition was through expert testimony. Psychological diagnosis was not within the jury's ken. Once armed with this testimony, they could choose to believe it or not in concluding whether Porter had the requisite knowledge, and they could then fairly decide her fate.

*Motion for reconsideration denied.*

DECIDED MARCH 24, 2000 —
RECONSIDERATION DENIED APRIL 13, 2000 — ▉▉▉▉▉▉

*William J. Mason,* for appellant.

*J. Gray Conger, District Attorney, Julia Slater, Assistant District Attorney,* for appellee.