A89A2302. HOLDER v. THE STATE.
(391 SE2d 808)

COOPER, Judge.

Appellant was convicted of trafficking in cocaine and possession with intent to distribute marijuana. He appeals from the denial of his amended motion for new trial.

Two informants, acting pursuant to the negotiated pleas of guilty which they had entered to charges of possession of cocaine with intent to distribute, telephoned appellant and told him they knew of someone interested in buying three to five ounces of cocaine. Appellant told them he could "most likely" get it and would phone them back if it was available. The undercover agent, equipped with a transmitter,

went with the informants to appellant's house with back-up units on surveillance. One of the informants introduced the agent to appellant as the person who wanted to make the buy and appellant asked whether the agent had the money, which the agent produced.

After making a telephone call, appellant told the undercover agent that a yellow cab would arrive shortly with the drugs. When the described cab arrived, appellant asked for $4,000 to take to the cab, but the agent gave him only $1,000 to buy one ounce. While the agent watched, appellant approached the cab, passed the money to the driver, and received a small plastic bag containing white powder. Appellant returned to the house, gave the agent the bag and informed him that it contained one ounce. The agent then gave a prearranged signal to the surveillance team and appellant and the occupants of the cab were arrested. 56.4 grams of a mixture that was 77 percent cocaine, the $1,000, and 7.73 ounces of marijuana were confiscated from the cab.

At trial appellant's defenses were entrapment, coercion and government overreaching. He attempted to show that the informants (Battles and Molina) were allowed to continue to sell and use cocaine while they were out on bond before they were to begin serving their sentences, and some evidence of this was introduced. Appellant underwent a psychiatric examination before trial that showed that he had suffered organic brain damage as a result of an automobile accident in 1972 which required a metal plate to be placed in his head. His prognosis for improvement was poor and his report said that he "would most likely require psychotropic medication for an indefinite period to improve the efficacy of his thought processes and reduce the likelihood of erratic, impulsive behavior."

Appellant testified at trial that he had known one of the informants, Battles, for 8-10 years and feared him because he was known as a big drug dealer. Appellant admitted he was a drug addict and stated that Battles' informant was his supplier. He further testified that Battles threatened to have him beaten when he complained about drug activity around his home. Appellant testified he agreed to set up the deal for which he was arrested because he was afraid of Battles and because Battles had already given appellant $5,000 worth of free cocaine for which he expected favors in return.

1. Appellant questions the sufficiency of the evidence, asserting that he never possessed the marijuana found in the cab and that he possessed only the 28.2 grams of cocaine he actually handled, not 84.6 grams as alleged in the indictment. Under OCGA § 16-13-31, as it existed at the time of appellant's arrest, one was guilty of trafficking in cocaine if one "knowingly deliver[ed] . . . or [was] knowingly in actual possession of 28 grams of cocaine or any mixture with a purity of 10% or more of cocaine. . . ." The indictment charged appellant

with knowingly having possession of 84.6 grams of a mixture with a purity of 10 percent or more of cocaine.

A chemist from the State Crime Lab testified that the bag of white powder that appellant handed to the undercover agent contained 28.2 grams of a mixture that was 77 percent cocaine. In addition, appellant was a party to the crime of possession of the contraband in the cab. OCGA § 16-2-20. "Whether he had physical possession of the cocaine [and marijuana in the cab], appellant aided and abetted its actual physical possession and is guilty of the offense of trafficking under OCGA § 16-13-31 and under § 16-2-20, as a party to the crime. . . . The 'actual possession' required by OCGA § 16-13-31 to authorize a conviction for trafficking refers not merely to physical custody but refers to actual active participation in the possession of such substances so as to be a party to the crime of trafficking." *Barrett v. State*, 183 Ga. App. 729, 735-36 (360 SE2d 400) (1987).

Appellant also contends that his defenses of entrapment and governmental overreaching were not overcome by the State. He distinguished the two defenses on the basis that the latter defense focuses on acts of governmental agents rather than on the defendant's predisposition to commit the crime. However, it has been expressly recognized by this court that "the entrapment defense focuses on the intent and predisposition of the defendant to commit the crime as well as upon the conduct of the government's agents. [Cit.] 'If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law.' [Cits.]"

" 'In order to raise the defense of entrapment a defendant must admit the commission of the crime; but that he did so because of the unlawful solicitation or inducement of a law enforcement agent.' [Cits.]" *Griffin v. State*, 154 Ga. App. 261 (3) (267 SE2d 867) (1980). In the case at bar there is no evidence that the undercover agent furnished appellant with the contraband or that the government implanted the entire criminal design in appellant's mind. Id. at 263. Rather, the law enforcement officers merely provided an opportunity to appellant, who was predisposed to commit the crimes. Since the State met its burden of rebutting appellant's defenses, his assertion concerning the sufficiency of the evidence is without merit. Since appellant's requested charge on "outrageous governmental conduct" was not supported by the evidence, the trial court did not err in refusing to give such an instruction. See *United States v. Russell*, 411 U. S. 423 (93 SC 1637, 36 LE2d 366) (1973).

2. Appellant contends that the trial court improperly denied his motion for mistrial when the informant, in a nonresponsive answer during direct examination by the State, testified that "everyone was

buying" from appellant. The trial court instructed the jury to disregard the last response and consider only the evidence that pertained to the offenses for which appellant was on trial. " 'A trial court has broad discretion in ruling on a motion for a mistrial, and this court will not disturb the court's ruling absent a manifest abuse of discretion which requires a mistrial to preserve the defendant's right to a fair trial. [Cits.]' It cannot be said the trial court abused its discretion in this case." *Lanzo v. State,* 187 Ga. App. 616 (2) (b) (371 SE2d 119) (1988).

3. In two related enumerations of error, the appellant asserts that the trial court violated his Sixth Amendment right to defend himself and develop substantive evidence at trial by refusing to allow the defense to properly present evidence pertaining to his mental faculties, which was relevant in regard to the issue of intent and his defenses of entrapment and coercion; and that the court further erred in charging the jury, over objection, on guilty but mentally ill, as this was burden shifting, relieving the State from proving intent beyond a reasonable doubt.

The trial transcript reflects, however, that defense counsel was allowed to present testimony that appellant was generally considered to be "crazy" or "not all there" in support of a diminished responsibility or impaired judgment defense. When his attorney sought to have appellant's parents testify that they had attempted to have him committed to an institution, the court ruled that it would not allow evidence of mental illness unless the jury was instructed on the option of a guilty but mentally ill verdict. Contrary to appellant's contentions, the Supreme Court has determined that the guilty but mentally ill statute (OCGA § 17-7-131) "places no burden on a defendant to prove that he is not mentally ill, or that he is guilty but mentally ill. The burden is on the [S]tate to prove that the defendant is guilty of the crime charged, including the requisite element of intent, beyond a reasonable doubt. The burden is on the defendant to prove he is not guilty by reason of insanity by a preponderance of the evidence. This latter requirement is constitutional. [Cits.]" *Keener v. State,* 254 Ga. 699 (2) (334 SE2d 175) (1985).

The trial court correctly instructed the jury that the burden was on the State to prove every material allegation of the indictment beyond a reasonable doubt, and that intent was an essential element of any crime that must be proved by the State beyond a reasonable doubt. Defense counsel conceded at trial that he could not prove that appellant was legally insane, but that he wanted to show that his mental disability was "somewheres in between" insanity and normal mental capacity. Thus, here as in *Dimauro v. State,* 185 Ga. App. 524 (3) (364 SE2d 900) (1988), charging the jury that they could arrive at a verdict of a guilty but mentally ill "merely allowed for an accommo-

dation to the mental health needs of the appellant who was [alleged to be] laboring under a mental illness which fell short of the legal defenses of insanity and delusional compulsion promulgated in OCGA §§ 16-3-2 and 16-3-3. [Cits.]" Consequently, the trial court did not err in instructing the jury that it had the option to reach this verdict.

4. Appellant complains that the trial court erred in failing to charge upon request the defense of coercion based upon his testimony that he had been beaten recently by the informant's thugs, that he knew the informant was a major drug dealer and that he was afraid to refuse his orders. Coercion as defined by OCGA § 16-3-26 is a defense to criminal conduct only if the defendant "reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury." " 'In order for duress or fear produced by threats or menaces, to be a valid legal excuse for doing anything which would otherwise be criminal, the act must have been done under such threats or menaces as show that life or member was in danger, or that there was reasonable cause to believe that there was such danger. The danger must not be one of future violence but of present and immediate violence *at the time of the commission of the forbidden act.* [Cits.]' " *Head v. State*, 191 Ga. App. 262 (1) (381 SE2d 519) (1989). Since none of appellant's evidence related to present and immediate violence towards him at the time he procured the cocaine for the informants so as to justify his criminal conduct, and there was no showing of a reasonable fear of immediate violence, the trial court did not err in refusing to give the requested charge. *Slater v. State*, 185 Ga. App. 889 (366 SE2d 240) (1989).

5. Appellant asserts that the trial court erred in its jury charge on trafficking. Review of the trial transcript reveals that the court correctly charged the jury in regard to the trafficking count in accord with the principles enunciated in *Lockwood v. State*, 257 Ga. 796 (364 SE2d 574) (1988). The court also clearly distinguished between actual and constructive possession, instructing the jury that actual possession related to the trafficking count, while actual or constructive possession relates to the charges of marijuana and cocaine possession. The instructions as given were a correct statement of the law and were in no way confusing. *Partridge v. State*, 187 Ga. App. 325 (5) (370 SE2d 173) (1988). This enumeration of error is without merit.

6. Appellant protests the trial court's restriction of his right to a thorough and sifting cross-examination of one of the informants. Our review of the trial transcript does not reveal that the errors asserted actually occurred. On the contrary, defense counsel was allowed to cross-examine both the informant and the undercover agent at length regarding the informants' arrest and conviction and their association which resulted in appellant's arrest. "Where the subject matter of the alleged curtailed cross-examination has been successfully explored

and answered by a witness, the trial judge does not unduly limit a defendant's right to a thorough and sifting cross-examination by refusing to allow it to be repeated or explored further. [Cit.] The scope of cross-examination lies largely within the discretion of the trial court. We will not disturb the exercise of that discretion where, as here, there has been no abuse of that discretion. [Cit.]" *Scott v. State*, 190 Ga. App. 359 (2) (378 SE2d 738) (1989). Appellant's attempt to introduce a prior conviction of a person who did not testify or appear at the trial was correctly rejected by the trial court as irrelevant to the issues on trial. OCGA § 24-2-1; *Santone v. State*, 187 Ga. App. 789, 792 (3) (371 SE2d 428) (1988).

*Judgment affirmed. Deen, P. J., and Birdsong, J., concur.*

DECIDED MARCH 9, 1990.

*Price & Conoscienti, Teddy R. Price*, for appellant.

*Robert E. Wilson, District Attorney, Patricia G. Higginbotham, Desiree L. Sutton, Assistant District Attorneys*, for appellee.