A01A1988. MIMMS v. THE STATE.
(562 SE2d 754)

POPE, Presiding Judge.

Daisy L. Mimms was arrested on May 27, 1999, and charged with DUI, criminal trespass, simple assault and interference with government property arising from an incident at a City of Atlanta restaurant. A jury trial was held in the City Court of Atlanta on October 13-14, 1999, and the jury found her guilty of DUI and tres-

---

[23] (Citations omitted.) *Hadsock v. J. H. Harvey Co.*, 212 Ga. App. 782, 784 (442 SE2d 892) (1994).

pass, but acquitted her on the remaining counts. Mimms filed a motion for new trial on October 15, 1999, asserting the general grounds, and further asserting that the trial court erred in excluding the testimony of her proffered expert witness.

Mimms was represented at trial by attorney George Stein, and he filed the motion for new trial on her behalf. The trial court issued a rule nisi setting a hearing on the motion for February 24, 2000. On February 16, 2000, attorney Monte Kevin Davis entered an appearance as counsel for Mimms "for the purposes of the Motion for New Trial and any Appeal." Nothing in Davis' notice of appearance indicates that he was substituting for Stein as counsel of record. Nor is there anything in the record indicating that Stein ever withdrew as Mimms' counsel, and, in fact, he represents Mimms, along with Davis, on appeal.

The hearing on Mimms' motion for new trial was reset eight different times between February and October 2000. Six of these times were due to a lack of transcript. There is some evidence in the record to indicate that the delay in preparing the transcript was occasioned, at least in part, by the failure of Mimms' attorney to pay the appropriate fees and deposits.

On September 28, 2000, the hearing was postponed to October 19 to allow Mimms' attorneys time to review the transcript. On October 19, Davis was unavailable due to a conflict in another court, and attorney Dawn Davis, his wife, appeared in his stead. She announced that the motion hearing would require five hours because the transcript was "huge."[1] The trial court rescheduled the hearing for October 26, 2000. Davis' wife did not mention any conflict and raised no objection to the scheduled date.

On October 26, however, no counsel appeared on Mimms' behalf, but Mimms appeared herself to inform the trial court that Davis had filed a leave of absence. The record reflects that a specific notice of leave of absence addressed to the new trial hearing was received by the trial court on the day of the hearing. Mimms tried four different telephone numbers — Davis' office number, his home number, his pager number and his wife's pager number — in order to resolve the matter, but was unable to reach Davis or his wife. The trial court denied Mimms' motion for new trial.

1. Mimms argues that it was error for the trial court to deny her motion without a hearing because her counsel had previously filed a "valid" leave of absence covering the date of the hearing. She asserts that her counsel had filed notices for leave of absence on July 18, 2000, September 19, 2000, and October 9, 2000, covering the period

---

[1] The actual transcript covers two volumes and 367 pages.

from October 23 through November 5, 2000. She contends that these notices requested less than 30 days leave and thus should have been automatically granted under Uniform Superior Court Rule 16.1.

As an initial matter, we note that attorney Stein never requested a leave of absence during the pertinent time period, yet he also failed to appear at the new trial hearing. With regard to Davis, the record shows that he filed the first in a series of notices of leave of absence on the day he entered his appearance in the case.[2] In that notice, he requested a series of leave dates, requesting one week in February, two weeks in March, one week in April and three weeks beginning in December, for a total of fifty-two calendar days. He followed the same pattern of leave requests throughout the year, but began including his notices of leave of absence as discrete paragraphs in conflict letters otherwise addressing a particular week. For example, in his July 18 letter informing the court of trial conflicts during the week of July 24, he also includes a paragraph requesting leave for the periods August 21 through September 3, October 23 through November 5 and December 11, 2000, through January 7, 2001, for a total of 56 calendar days. In the same fashion, his September 19 notice covers a total of 60 calendar days, and his October 10 notice covers 46 calendar days.

Mimms asserts that these notices were covered under USCR 16.1 which, in the absence of an objection, automatically grants leave requests of 30 calendar days *or less*. She asserts, therefore, that an automatic leave was in place at the time of the new trial hearing on October 26. But a notice of leave of absence covering more than 30 calendar days, whether all at the same time or over several time periods, falls under USCR 16.2, not USCR 16.1. *State v. Dodge*, 251 Ga. App. 361, 363 (1) (553 SE2d 831) (2001); *Linkous v. State*, 254 Ga. App. 43, 46 (561 SE2d 128) (2002). Under USCR 16.2, a leave of absence requesting in excess of 30 days is not automatically granted, but rather is left to the trial court's discretion.

Therefore, at the time of the hearing on the motion for new trial, no valid leave of absence was in place. And Mimms' attorneys were put on notice of this fact on October 19 when the trial court scheduled the hearing date for October 26 in Dawn Davis' presence.

A defendant is generally entitled to a hearing on her motion for new trial, *Shockley v. State*, 230 Ga. 869 (199 SE2d 791) (1973), but the right to a hearing can be waived. See, e.g., *Wilkins v. State*, 220 Ga. App. 516, 518 (3) (469 SE2d 695) (1996). The trial court in this case had already reset the hearing eight times over a period of almost

---

[2] Overall, Davis requested eleven weeks and four days of leave between February 16, 2000, and November 5, 2000, and an additional four weeks of leave between December 11, 2000, and January 7, 2001.

one year. While much of this delay was attributable to the failure of the court reporter to prepare a transcript, there is at least some question as to whether Mimms' counsel contributed to this delay. Moreover, Mimms' counsel were aware on October 19 that the hearing date was scheduled during Davis' purported leave of absence, but they did not inform the trial court of the supposed conflict until the date of the hearing. Under these circumstances, we hold that the trial court did not err in dismissing Mimms' motion. See *Dunn v. State*, 172 Ga. App. 146 (1) (322 SE2d 349) (1984); *Scott v. State*, 121 Ga. App. 458, 461 (6) (174 SE2d 243) (1970); *Moody v. State*, 14 Ga. App. 523, 526 (2) (81 SE 588) (1914). Moreover, Mimms has failed to assert how she has been injured by the failure to have a hearing. *Dunn*, 172 Ga. App. at 146 (1).

2. Mimms also argues that she should have been granted a new trial because the trial court prevented her from presenting the testimony of Dr. Joe Citron, an ophthalmologist, as an expert on alcohol consumption physiology and on drug interactions. Mimms based her claim that Dr. Citron was an expert in these areas on his general medical school training and the fact that he had taken a course on the Intoxilyzer 5000. She asserts on appeal that the doctor's testimony would have shown that her behavior on the night she was arrested was due to the medication she was taking, and not due to alcohol consumption. Because she was charged with DUI based upon only alcohol consumption, and not upon the consumption of prescription drugs or a combination of the two, she argues that the doctor's testimony would have allowed the jury to consider acquitting her on what she terms a technical ground. She now asserts that this was her sole defense at trial.

The state contends that Mimms failed to present sufficient evidence of Dr. Citron's qualification to testify as an expert in the areas of alcohol consumption physiology and on drug interactions. Moreover, the state argues that Mimms failed to demonstrate the relevance of such testimony at trial. Although she now contends that her sole defense at trial was that her behavior on the night of her arrest could be explained by medication or other disorders, there was no proffer at trial that Dr. Citron would testify as to such issues. The closest reference was Mimms' trial attorney's statement that his testimony would "explain her behavior." Moreover, at trial Mimms denied that her behavior was inappropriate or that there was any impairment in behavior from any source.

The decision whether to admit or exclude expert testimony "lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." (Punctuation omitted.) *Johnson v. State*, 272 Ga. 254, 257 (1) (526 SE2d 549) (2000). See also *O'Neal v. State*, 254 Ga. 1, 3 (3) (325 SE2d 759)

(1985). Here, the trial court ruled that Dr. Citron's proffered testimony regarding the effects of alcohol on Mimms' system was not relevant because there was no blood or breath test administered in her case. In fact, the Intoxilyzer 5000 machine was not functioning at the time of her arrest. Therefore, there was no evidence of the amount of alcohol in her system. Further, because Dr. Citron was not Mimms' prescribing physician, the trial court found that he was not competent to testify as to the purposes for which those drugs were prescribed, because he would be relying upon hearsay.

Based upon our review of the record, we find that Mimms has failed to demonstrate a manifest abuse of discretion in the trial court's decision not to qualify Dr. Citron as an expert under the circumstances and to exclude his testimony. See *Carlson v. State*, 240 Ga. App. 589 (1) (524 SE2d 283) (1999).

3. In her remaining enumerations of error, Mimms asserts that the city court lacks constitutional existence and jurisdiction under the 1983 Georgia Constitution. The state correctly notes that this issue was not raised in the court below and thus cannot be considered by this Court on appeal. See *Pogany v. State*, 249 Ga. App. 212, 213 (547 SE2d 780) (2001). Moreover, our Supreme Court has already decided these issues adversely to Mimms in *Wickham v. State*, 273 Ga. 563 (544 SE2d 439) (2001).

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED MARCH 13, 2002 —
RECONSIDERATION DENIED MARCH 27, 2002 —

*Monte K. Davis, George A. Stein*, for appellant.
*Joseph J. Drolet, Solicitor-General, Katherine Diamandis, Assistant Solicitor-General*, for appellee.