## A03A2488. SAILOR v. THE STATE.
(595 SE2d 335)

MIKELL, Judge.

After a jury trial, Galen Lee Sailor was convicted of one count of aggravated child molestation and two counts of child molestation. Sailor was sentenced to 30 years to serve on the first count and 20 years for each child molestation conviction, to run concurrently with the 30 years. On appeal, Sailor challenges the sufficiency of the evidence. Sailor also argues that the trial court erred by overruling his objection to the allegedly speculative testimony of the victim's father and by permitting Exhibits 2 through 12 to go out with the jury. Lastly, Sailor maintains that the trial court's consideration of his prior nolo contendere pleas in aggravation of his sentence was erroneous. For the reasons stated below, we affirm.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no

---

[17] *Knight,* supra at 581.

longer enjoys a presumption of innocence."[1] So construed, the evidence shows that the victim, H. F., was the six-year-old granddaughter of the defendant's wife, Linda Sailor. Linda's mother, Bess Robinson, who lived with Linda and the defendant, babysat H. F. and her older brother during the Thanksgiving and Christmas holidays in 2001. Sailor worked flexible hours, so he was often home during the day with Robinson and the children.

Robinson testified that H. F. would spend the day playing with her Barbie dolls or on the computer with Sailor, which was located in Sailor's bedroom; that she would normally be in the living room while Sailor and H. F. were on the computer, but she often walked by the bedroom door to check on H. F.; and that Sailor and H. F. were alone at times. Martha Fennell, H. F.'s mother, testified that during the first week in January 2002, H. F. told her that Sailor, whom she referred to as "papa," touched her private part. Shortly thereafter, H. F. told her father, Albert Fennell, that "papa had been playing with my cooter cat." Albert testified that he confronted Sailor, but Sailor denied H. F.'s accusations.

Tracie Hartley, who was proffered as an expert in the forensic interviewing of sexually abused children, testified that she interviewed H. F. at the Crescent House, a child advocacy center, on January 4, 2002. The interview, which was videotaped, was played for the jury. During the interview, H. F. told Hartley that Sailor touched her "cooter cat" with his middle finger and rubbed his finger under her panties and that he touched her "butt, boobies," and belly when they were sitting at the computer. Also, H. F. recalled a separate incident where Sailor made her touch his penis.

Dr. Debbie West, a pediatrician and the Crescent House's medical director, examined H. F. on January 4, 2002. Based on her examination, Dr. West concluded that H. F. had been sexually abused because her vagina had been penetrated, evidenced by the child's broken hymen and the resulting scar tissue. Dr. West could not opine as to what object had been used to penetrate the child's vagina or the number of times the child had been penetrated. However, she did opine that the penetration itself was painful to the child and that based on the maturity of the scar tissue, the injury was at least a month old.

The state also offered similar transaction evidence against Sailor in the form of testimony from his daughters from his first and third marriages, respectively, Tammy Pope and Alicia Arnold. Pope, who was thirty years old at the time of trial, testified that when she was five years old, Sailor called her into his bedroom and asked her to put

---

[1] (Punctuation and footnote omitted.) *Dean v. State*, 252 Ga. App. 204 (555 SE2d 868) (2001).

her mouth on his penis, and she did. Pope testified that the abuse continued after her mother divorced Sailor; that he molested her when she visited him every other weekend; that in addition to oral sex, Sailor made her masturbate him and use profane language while doing so; that he penetrated her with his finger; that the abuse stopped when she was eleven years old after she moved to South Carolina with her mother; that she told her mother about the abuse when she was twelve years old; that she went to live with Sailor again four years later because she was having problems with her mother; and that Sailor apologized and asked for her forgiveness, and she forgave him. Arnold, who was 18 years old at the time of trial, testified that she lived with her father after her parents divorced and that when she was 13, he played with her vagina, penetrated her with his penis and his finger, which was painful to her, and told her not to tell anyone.

1. In his first enumeration of error, Sailor argues that both his motion for new trial and motion for directed verdict should have been granted due to the insufficiency of the evidence. We disagree.

We review the denial of a motion for a directed verdict of acquittal and of a motion for new trial and challenges to the sufficiency of the evidence under the same standard.[2] "[W]e . . . determine whether, after viewing the evidence in the light most favorable to support the verdict, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt."[3] We do not weigh the evidence or assess witness credibility, and the appellant is no longer presumed innocent.[4]

A person who does any immoral or indecent act to a child under the age of 16 years with the intent to arouse or satisfy his own or the child's sexual desires commits child molestation.[5] "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."[6] As the evidence supports the finding that Sailor penetrated H. F.'s vagina, causing her physical injury, we find that it was sufficient to authorize the jury's verdict.

2. Sailor next argues that the trial court erred by denying his objection to the following testimony of H. F.'s father:

Q. Albert, before that [January], do you know if H. F. had ever tried to tell you something about her papa?

---

[2] *Spradlin v. State*, 262 Ga. App. 897 (1) (587 SE2d 155) (2003); *Sharpe v. State*, 213 Ga. App. 280, 282 (1) (444 SE2d 600) (1994).

[3] (Footnote omitted.) *Reece v. State*, 241 Ga. App. 809 (527 SE2d 642) (2000).

[4] *Vasquez v. State*, 241 Ga. App. 512, 513 (1) (527 SE2d 235) (1999).

[5] OCGA § 16-6-4 (a).

[6] OCGA § 16-6-4 (c).

A. Actually yes, ma'am, and this is what so hurts me so deeply being a father and not listening as good. . . . And we were coming home and H. F. was sitting in between me and my brother in the front seat and my son was in the back seat, and H. F. turned around and looked at me and she said daddy, I need to tell you something, and me and my brother were talking about something and I told her, I said, baby, don't interrupt daddy, I said me and Uncle Donnie is talking, and so she did, she stopped talking. And then a few miles further she started it again and asked me, — you know, she told me, daddy, I need to tell you something, papa and she got that far and I interrupted her again, and I told her I said you hear me and Uncle Donnie talking, you don't need to interrupt us while we are talking and so then she did not say anything else.

The prosecutor then asked, "Did you go straight home?" at which point defense counsel objected on the grounds that the line of questioning called for speculation as to what the child may or may not have wanted to ask. He asked the court to strike the testimony and to instruct the jury to disregard it.

"Admission of evidence is a matter which rests largely within the sound discretion of the trial court and an appellate court will not interfere with its rulings absent abuse of that discretion."[7] The conversation at issue occurred during the time that the state alleged the abuse was occurring. Sailor objected on the grounds that the testimony was speculative. However, the testimony simply reflects the actual conversation between H. F. and her father; it does not speculate as to what H. F. wanted to say to her father. Nonetheless, Sailor wants us to speculate that the testimony had a malignant effect upon the jury, which we cannot do.[8] "The Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value."[9] "Any evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant."[10] Even if the trial court erred in failing to

---

[7] (Citation omitted.) *Whisnant v. State*, 178 Ga. App. 742, 743 (1) (344 SE2d 536) (1986).

[8] Cf. *Bonilla v. State*, 204 Ga. App. 424, 426 (2) (419 SE2d 495) (1992) (this Court refused to speculate as to what the jury may have speculated from admitted evidence); *Edwards v. State*, 200 Ga. App. 580, 583 (2) (408 SE2d 802) (1991) (defendant's argument speculating that evidence had a malignant effect on jury was rejected).

[9] (Citations and punctuation omitted.) *Sprouse v. State*, 242 Ga. 831, 833 (3) (252 SE2d 173) (1979).

[10] (Citations and punctuation omitted.) *Owens v. State*, 248 Ga. 629, 630 (284 SE2d 408) (1981).

instruct the jury to disregard the testimony, however, we could not reverse Sailor's conviction, in light of the overwhelming evidence of his guilt. To warrant a reversal, Sailor must show error and harm, and he has not carried this burden.[11]

3. In his third enumeration of error, Sailor argues that the trial court erred by allowing letters that he wrote to his wife and daughter to go out with the jury, violating the continuing witness rule. We disagree.

State's Exhibits 2 through 10 were letters from Sailor to his wife, Linda. Sailor wrote that he loved Linda and accepted blame for destroying their beautiful marriage; that she could hate what he did or be mad about it but still love him; that he wanted her to give him another chance; that God had forgiven him and that he had repented; that he wanted to apologize to Albert and Martha; that he did wrong one time but he would never do it again; that he understood that H. F. and her parents hated him; that he knew that he was the offender and that Linda and her family were the victims of his terrible behavior; that he had his hand in H. F.'s pants, rubbing her lower belly for about 15 seconds but did not penetrate her, touch her private parts, or force her to touch him; and that the incident had been blown out of proportion. Exhibits 11 and 12 were letters from Sailor to Pope, in which he apologized and asked for her forgiveness. Sailor did not object to the introduction of any of these exhibits.

> In Georgia the "continuing witness" objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.[12]

In this case, the letters were not read to the jury so they were not duplicative of testimony. Thus, the continuing witness rule does not apply. Furthermore, we have previously held that "letters admitted into evidence [may] go out with the jury."[13]

4. Finally, Sailor argues that the trial court erred by considering two nolo contendere pleas that he entered on misdemeanor charges in Michigan as felony convictions for purposes of sentencing him as a recidivist. The state filed its notice of intent to use this evidence in

---

[11] *Gregg v. State*, 216 Ga. App. 135, 137 (453 SE2d 499) (1995).

[12] (Citations and punctuation omitted.) *Hinton v. State*, 233 Ga. App. 213 (1) (504 SE2d 49) (1998).

[13] (Citations omitted.) *Moore v. State*, 191 Ga. App. 911, 913 (3) (383 SE2d 355) (1989).

aggravation of sentence. There is no dispute that the trial judge is permitted to consider nolo contendere pleas of a defendant as evidence in aggravation of punishment.[14] However, we need not reach the issue of whether it was proper to use these convictions to sentence Sailor as a recidivist because there is no evidence that Sailor was so sentenced.

OCGA § 16-6-4 (d) (1) provides that "[a] person convicted of the offense of aggravated child molestation shall be punished by imprisonment for not less than ten nor more than 30 years." Sailor was sentenced to the maximum, 30 years, which was permissible for a first time offender.[15] Similarly, Sailor's concurrent 20-year sentences for each child molestation conviction were also within the statutory guidelines. "A person convicted of a first offense of child molestation shall be punished by imprisonment for not less than five nor more than 20 years."[16] Accordingly, this enumeration fails.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 17, 2004.

*David E. Morgan III*, for appellant.
*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney*, for appellee.

[14] OCGA § 17-10-2 (a).
[15] OCGA § 16-6-4 (d) (1).
[16] OCGA § 16-6-4 (b).