## A06A0502. PICKLE v. THE STATE.
### (635 SE2d 197)

BARNES, Judge.

Selena Pickle was found guilty of thirteen counts of cruelty to children in the first degree, eleven counts of aggravated battery, and four counts of aggravated assault for crimes committed against her nine-year-old daughter. Pickle had filed a notice of intent to introduce the defenses of battered person syndrome and coercion through an expert witness, Dr. Marti Loring. The State moved to exclude the evidence, arguing that Pickle could not use the battered person syndrome as an affirmative defense, and the trial court granted the motion. Thereafter, Pickle made a proffer of Dr. Loring's testimony, who essentially concluded that Pickle was a victim of battered person syndrome.

In her appeal, Pickle argues that the trial court erred by excluding her expert testimony relating to battered person syndrome, and in admitting evidence barred by the Child Hearsay Statute.

The facts, viewed in the light most favorable to the verdict, show that Pickle is married to Jerome Pickle, the victim's stepfather. The couple married in 1997, divorced three years later, and remarried the next year.

The events leading up to the Pickles' arrest occurred from March 9, 2003 until March 13, 2003, the date Pickle arrived at a local hospital's emergency room with her nine-year-old daughter who was so badly bruised that her race could not be initially determined. The facts demonstrate that on March 9, Pickle's husband became enraged with his stepdaughter when she wet the bed and pushed the child so violently that her head hit the bedroom window and broke it. He then kicked the child in her vagina, causing a tear that bled until Pickle's husband sewed the wound shut with fishing line.

The next day, Pickle and the victim went with her husband to his psychiatrist's office, but Pickle said that she was unable to escape because she and her daughter were locked in the car, and the cell phone keys were also locked. Later that same day when her husband went out to get beer, she called her brother-in-law who lived next door and told him she was afraid of her husband, but recanted her statement when he came over. On March 13, after her husband went to the store, Pickle went next door to her brother-in-law's because she

was worried about her daughter. He convinced her to take the child to the hospital. The injuries to the child were extensive. Including the vaginal injury, she had serious lacerations, bruises and burns over a significant portion of her body, was severely malnourished, and addicted to Xanax.

The victim reported that she had been tied to the bed on several previous occasions, dragged through the house, hit in the head with different objects, and made to lie in the sun until her face blistered. She said that sometimes she was not fed for days, then she would be forced to eat and then kicked until she threw up the food. She said that her mother would "whoop me in the chest with a belt or fly swatter about every day. She would whoop me all over with a hickory stick about twice a week. She would shake me and hit me about every day," and that on some occasions her mother abused her, and other times her stepfather did. The child also said that her mother had duct taped her eyes, mouth, and hands and laid her in the hallway for hours, day or night.

The victim also said that her mother sometimes begged her stepfather not to hurt her, but that her mother would participate in the beatings to protect the family. She also said that her stepfather had put a gun to her mother's head and threatened to shoot her, and hit her mother "a lot." She said that on the night she was taken to the hospital, her mother told her to say that this was the first time her stepfather had ever hurt her. The victim also said that when her stepfather was asleep, she would beg her mother to leave and take her, and then said, "I don't know why she wouldn't leave."

Jerome and Selena Pickle were both arrested and charged with these crimes, but Selena Pickle successfully moved to sever her trial from her husband's.

1. Pickle contends that the trial court erred by excluding expert testimony regarding the battered person syndrome. She contends that the evidence was relevant to explain her conduct and mental state, and also relevant to her defense of coercion. "The decision to exclude expert testimony lies within the trial court's sound discretion, and this court will not disturb it absent a clear abuse of discretion." *Viau v. State*, 260 Ga. App. 96, 98 (2) (579 SE2d 52) (2003), citing *Mimms v. State*, 254 Ga. App. 483, 486 (2) (562 SE2d 754) (2002).

(a) Pickle first argues that she was not using the syndrome as an affirmative defense as in *Graham v. State*, 239 Ga. App. 429 (521 SE2d 249) (1999), but as probative evidence of her mental state and to explain her conduct and negate any criminal intent on her part. She maintained that without the expert's testimony regarding battered person syndrome and the dynamics of domestic abuse, the jury had no way of understanding why she did not leave the situation, call

the police or attempt to stop her husband's cruelty to the victim. At trial she contended that

> the court said specifically [in *Alvarado v. State*, 257 Ga. App. 746 (572 SE2d 18) (2002)] that it has held that expert testimony is admissible to explain the behavior of a domestic violence victim who does not report abuse or leave the abuser. . . . Ours is the reverse. We are seeking to put the expert testimony in to explain the behavior of the defendant, which is a victim of domestic violence who does not leave the abuser and scientific terms to explain that, all of which is admissible. The only thing that is not admissible in this state in light of *Graham* is I cannot and will not argue to the jury that they can find her not guilty of justification because she's battered, they can use the evidence that they receive along with all other evidence to understand what acts were taken by her or not taken by her and they can apply that as they do every other piece of evidence to the other instructions of the Court dealing with reasonable doubt and coercion. That's why it's admissible. *Our expert does not intend, nor will we seek to elicit, any testimony specifically as to whether or not Mrs. Pickle is a victim in [the expert's] eyes of battered wife's syndrome because I think that might go too far.*

(Emphasis supplied.)

She further argued that

> we are ready to be able to take specific evidence that is in this case, admitted before this jury, and the expert is prepared, based on the evidence in the record, to testify as to specific acts and explain within her expertise and scientific foundation how those acts fit within the cycle of violence, how they are to be explained in terms of the abuser, the abused, the victim and the relationship between them.

The State complained that the expert would be testifying as to facts in the jury's province, and the trial court agreed. The trial court opined that "[i]t sounds like . . . you're not going to call your client a battered wife or a battered person because that's going too far, but you're going to pick up instances that occurred and say this is battered." The trial court noted that battered person syndrome is not a separate affirmative defense, but information admitted to assist the jury in evaluating the issue of imminent danger in a self-defense claim. It further noted that the defense had "been able to introduce

every threat through every witness, hearsay or not, of the acts of violence perpetrated upon Mrs. Pickle by Mr. Pickle and no objection has been made to any of that."

Pickle claims that the trial court committed reversible error in applying *Graham* to exclude the expert testimony that she suffered from battered person syndrome. In *Graham*, the mother challenged her conviction for three counts of aggravated child molestation perpetrated against her children. She maintained that the trial court erred in excluding evidence of prior domestic violence. She argued that she should have been able to present a justification defense in the form of a battered person defense, and present evidence that her acts against her children were justified because she had previously been beaten and threatened by her husband.

In affirming the trial court's exclusion of this evidence, this court held that

> under OCGA § 16-3-20, a defendant is entitled to raise a justification defense for, inter alia, acts of self-defense, defense of property, entrapment, coercion, and in all other instances which stand upon the same footing of reason and justice as those enumerated in this article. In this state, the battered person syndrome is not a separate defense and evidence supporting this syndrome is admissible only to assist the jury in evaluating a defendant's claim of self-defense under OCGA § 16-3-21. However, self-defense is not an issue in this trial, where the criminal acts were directed toward non-aggressor victims.

(Citations and punctuation omitted.) *Graham v. State*, supra, 239 Ga. App. at 431. *Graham* is not controlling in this case, however, because Pickle did not seek to have evidence of battered person syndrome admitted to establish a justification defense, but rather to show she lacked the requisite intent to commit these crimes.

The battered person syndrome describes a series of common characteristics that appear in persons who are abused physically and psychologically over an extended period of time by a dominant figure in their lives. *Mobley v. State*, 269 Ga. 738, 739 (505 SE2d 722) (1998). The syndrome is not a separate defense and is admissible only to assist the jury in evaluating a defendant's claims of self-defense under OCGA § 16-3-21. *Selman v. State*, 267 Ga. 198, 200-201 (3) (475 SE2d 892) (1996). Generally, an expert's testimony is admissible to assist the jury in evaluating the victim's defense of self-defense by explaining why a person suffering from battered person syndrome "would not leave her mate, would not inform police or friends, and would fear increased aggression against herself" so as to justify her

actions toward her mate. *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981). The evidence is "admissible for the limited purpose of illustrating that defendant had a reasonable belief in the imminence of additional physical abuse at the hands of the victim and that, therefore, she was presently justified in acting in self-defense." *Smith v. State*, 268 Ga. 196, 199 (486 SE2d 819) (1997).

This court, however, has also permitted the use of the battered person syndrome in certain cases to explain the actions of *victims* of crimes who do not leave despite acts of domestic violence perpetrated against them. In *Alvarado v. State*, supra, 257 Ga. App. at 746, Alvarado was convicted of aggravated assault and family violence against his girlfriend. The defense attempted to undermine the victim's credibility by cross-examining her about her failure to report the abuse to the police. Id. at 748 (2). The trial court allowed a domestic violence expert to testify about battered person syndrome, and on appeal we held that the domestic violence expert's testimony was admissible to assist the jury and show why the victim did not report the abuse right away. Id. We held that the expert testimony regarding battered person syndrome was admissible because the reasons why a battered person would not leave the abuser or report his abuse are beyond the ken of the average layman. Id.

Likewise, in *Parrish v. State*, 237 Ga. App. 274 (514 SE2d 458) (1999), we found expert testimony regarding battered person syndrome admissible when "Parrish's attorney sought to defend his client by undermining the victim's credibility through illustrating her failure to seek help. Accordingly, [the expert's] testimony regarding the 'learned helplessness' of women in abusive relationships was relevant to explain the victim's behavior." Id. at 277 (2) (i). See, too, *Evans v. State*, 259 Ga. App. 9, 11-12 (3) (576 SE2d 27) (2002) (in aggravated battery prosecution, expert explained why a person with the syndrome may lie to police in order to protect the perpetrator from prosecution or herself from the perpetrator).

Only a few courts in other jurisdictions have published opinions discussing the admissibility of battered person syndrome evidence when self-defense is not an issue at trial, and when the criminal acts were directed toward nonaggressor victims. In *State v. Mott*, 931 P2d 1046 (Ariz. Supreme Ct. 1997), cert. denied, *Mott v. Arizona*, 520 U. S. 1234 (117 SC 1832, 137 LE2d 1038) (1997), the Arizona Supreme Court affirmed the trial court's decision finding that expert testimony regarding battered person syndrome was inadmissible in a case in which the defendant was charged with child abuse and first degree murder in the death of her two-and-one-half-year-old daughter. Mott left the child with her boyfriend, and upon discovering injuries to the child when she returned, failed to take her to the hospital for treatment, which ultimately caused her death. Id. at 1048. The expert

was to testify that Mott was a battered woman and, as such, her history of being abused prohibited her from being able to decide to take her daughter to the hospital for help. Id. at 1050. The court held that "Arizona does not allow evidence of a defendant's mental disorder short of insanity either as an affirmative defense or to negate the *mens rea* element of a crime," id. at 1051, and that the expert's testimony about battered person syndrome and Mott's history of abuse was not admissible for the purpose of demonstrating that her mental incapacity negated specific intent. Id. at 1054.

In *Mott v. Stewart*, 2002 U. S. Dist. LEXIS 23165 (D. Ariz. 2002), a federal district court granted Mott's application for a writ of habeas corpus. The district court noted that "[s]pecific intent crimes of omission are both more difficult to prove and more difficult to disprove. As a result of the nature of the charges against [Mott], the possibility of a Due Process violation was heightened because of the defense's limited opportunities to challenge the state's evidence." Id. While recognizing a state's right to limit the use of mental disease or defects in the defense of crimes, the district court reasoned that a

> state's efforts to limit the insanity defense is a separate issue from criminal defendants being allowed to present evidence providing an alternative explanation for their conduct or to argue that they did not have the requisite intent and therefore, did not commit the charged offense. The distinction between whether evidence is being introduced to prove insanity or negate an element of the offense may be difficult for jurors to inherently understand. However, detailed jury instructions could explain the limited purpose for which the evidence should be considered.

Id.

Similarly, in *Barrett v. State*, 675 NE2d 1112, 1116 (Ind. Ct. App. 1996), the Indiana Court of Appeals held that evidence of battered person syndrome was admissible to negate the defendant's mens rea in a charge of neglecting a child who died at her boyfriend's hands. In determining that battered person syndrome evidence was not limited to cases of self-defense, the court noted that "Indiana courts have considered the admissibility of [battered person syndrome] based on the facts of each particular case," holding that the evidence was admissible "so long as it is relevant," to an issue before the court. Id. at 1116-1117. The court rejected the State's contention that the

admission of evidence of battered person syndrome was only relevant in cases in which the defendant argued self-defense.[1]

Here, likewise, Pickle attempted to present the evidence of battered person syndrome to negate specific intent, or, in other words, contravene that she had acted knowingly and intentionally, rather than as a separate defense. Essentially she argued that her evidence would specifically go to whether the State had proved specific intent, and would go to establish whether Pickle had the culpable mental state necessary to be found guilty of the crime.

The dissent in *Mott*, supra, addressed the subtle distinction between using the evidence of battered person syndrome to negate specific intent as opposed to using it as an affirmative defense. *State v. Mott*, supra, 931 P2d at 1061. Evidence that tends to negate intent is presented to show that, although the defendant was capable of acting knowingly or intentionally, the circumstances in which he or she acted indicate the action taken was not knowing or intentional. Further, even if the jury believes the expert testimony, it still must decide whether or not the defendant actually formed the requisite mental state, considering all the evidence. Quoting from Stephen J. Morse, Undiminished Confusion in Diminished Capacity, 75 J. Crim. L. & Criminology 1, 6 (1984), the dissent explained that

> [i]t is clear that the *mens rea* variant of diminished capacity is not a separate defense that deserves to be called "diminished capacity" or any other name connoting that it is some sort of special, affirmative defense. The defendant is simply introducing evidence, in this case evidence of mental abnormality, to make the following claim: "I did not commit the crime charged because I did not possess the requisite *mens rea*." This is not an affirmative defense such as insanity whereby the defendant admits or has proved against him the elements of the crime charged, but then raises a claim of justification or excuse. Rather, the defendant is straightforwardly denying the prosecution's claim that a requisite mental element was present at the time of the offense. He is

---

[1] *Barrett v. State* was superseded by statute. See *Marley v. State*, 747 NE2d 1123, 1128 (Ind. Supreme Ct. 2001) ("[T]he legislature has determined that, where the defendant claims that battered women's syndrome has affected her ability to appreciate the wrongfulness of her conduct, she must proceed under the insanity defense. . . . To the extent that *Barrett* suggests that battered women's syndrome evidence is admissible on the issue of lack of intent or knowledge without compliance with the insanity statute, it is superseded by the 1997 legislation.").

claiming that he is not guilty of that crime at all, although he may be guilty of a lesser crime if all the elements of the latter are proven.

(Punctuation omitted.) *State v. Mott*, supra, 931 P2d at 1062.

While we have recognized battered person syndrome as a "unique and almost mysterious area of human response and behavior," *Sinns v. State*, 248 Ga. 385, 387 (283 SE2d 479) (1981), the response and behavior relate to the dynamics between the victim and the aggressor, not between a victim and a nonaggressor victim. Here, the defendant seeks to introduce evidence generally admissible to establish the mental state necessary to the defense of justification to, instead, rebut the mental state necessary to establish intent in the crimes of child abuse, battery, and aggravated assault.

In her proffered testimony, Pickle's expert, Dr. Loring, testified that

to understand why a woman would actually participate in harming a child she loves or not leave during the time of terror to protect the child she loves is simply not understandable unless we talk about or I talk about as an expert the impact of the Battered Woman's Syndrome of the incredible stress and panic that would make understandable her behavior that would in fact help to explain why in the context of that battering relationship her behavior may be the safest and the most protective at that time to keep her child alive.

It is well established that evidence is relevant and, therefore, admissible if it tends to prove a material issue in the case. OCGA § 24-2-1. We have further held that every act or circumstance which serves to explain or throw light upon a material issue is relevant. See *Sailor v. State*, 265 Ga. App. 645, 648 (2) (595 SE2d 335) (2004); *Smith v. State*, supra, 247 Ga. at 619 (proffered testimony was admissible because it supplied "an interpretation of the facts which differed from the ordinary lay perception").

In *Paul v. State*, 274 Ga. 601 (555 SE2d 716) (2001), the trial court refused to permit Paul to introduce psychological evidence during the guilt/innocence phase of the trial to negate specific intent, an essential element of malice murder. He asserted that he was *not* attempting to use the expert testimony to establish that he suffered from a mental infirmity amounting to insanity, delusional compulsion, or mental incompetence, but that he was entitled to introduce expert evidence of his mental impairment to show his lack of intent to kill. Our Supreme Court rejected the argument, citing *Selman v. State*, supra, 267 Ga. at 198 (3), on the ground that the expert

evidence was irrelevant to the state of mind necessary to determine guilt in light of Paul's refusal to assert an insanity defense or that he was mentally ill at the time of the conduct in question. Id. at 603 (2).

In *Porter v. State*, 243 Ga. App. 498 (532 SE2d 407) (2000), we distinguished *Selman*, after finding that the trial court erred in excluding the testimony of a psychologist regarding a mother's behavior as it related to the abuse of her child. In *Porter*, the mother was indicted jointly with her husband on charges stemming from the abuse of Porter's son. Porter attempted to introduce as evidence a psychologist's testimony that Porter's "whole psychological makeup is almost designed to not see things that are too painful to see," and that "this usually happens when one is subjected to some type of abuse or severe emotional distress as a child. She could not say whether Porter actually was herself subjected to such abuse, but she stated that generally that is how such mechanisms are formed." Id. at 503 (5). In finding the testimony admissible, we concluded that "this issue does not relate to an insanity defense. It has to do with the presentation of psychological evidence that falls short of being an insanity defense." Id.

In distinguishing *Selman*, we noted that

> Selman's defense was in the nature of a justification defense and although OCGA § 16-3-21 (d) (2) provides for the admissibility of relevant expert testimony regarding the condition of the mind of a defendant in a situation of abuse, it has not otherwise changed the rule in homicides where justification is raised as a defense, namely, that justification is based upon the fears of a reasonable person, not upon the reasonable fears of the defendant.

(Citation and punctuation omitted.) *Porter v. State*, supra, 243 Ga. App. at 506 (on motion for reconsideration).

In *Porter* we found the evidence was admissible to show whether Porter knew about her husband's actions, as it related to several of the crimes charged, rather than to show the absence or presence of criminal intent. We find that in this instance, it is for the jury to decide whether Pickle had the requisite intent, and

> it was important that their decision be made upon all the facts. If, indeed, [Pickle] suffered from a psychological condition that caused her [to believe she had to hurt the child to help her,] the only way the jury could know about such a condition was through expert testimony. Psychological diagnosis was not within the jury's ken. Once armed with this testimony, they could choose to believe it or not in concluding

whether [Pickle] had the requisite [intent], and they could then fairly decide her fate.

Id. at 508 (on motion for reconsideration). That being so, it was error for the trial court to exclude expert testimony of battered person syndrome.

However, "it is not every erroneous exclusion of evidence that will suffice to reverse a judgment, and a case will not be reversed for error in the rejection of evidence unless the error results in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right." *Hall v. State*, 202 Ga. 619, 620 (2) (44 SE2d 234) (1947). Here, given that the overwhelming weight of evidence established that Pickle's conduct was knowing, if not intentional, nothing within the proposed testimony would have authorized a contrary finding. Moreover, this was not Pickle's only defense, as she was allowed to fully pursue an affirmative defense of coercion. Compare *Porter v. State*, supra, 243 Ga. at 503 (reversible error when exclusion of the evidence of mother's psychological makeup precluded Porter's only defense that she did not know her husband was abusing her son). Thus, while it was error for the trial court to exclude the expert testimony regarding battered person syndrome, we, nonetheless, find such error harmless.

(b) Pickle also argues that she should have been allowed to present the expert testimony of battered person syndrome to support her justification defense of coercion. A justification defense of coercion is available to show that a criminal act "is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury." OCGA § 16-3-26.

In order for duress or fear produced by threats or menaces[ ] to be a valid legal excuse for doing anything which would otherwise be criminal, the act must have been done under such threats or menaces as show that life or member was in danger. . . . The danger must not be one of future violence but of present and immediate violence *at the time of the commission of the forbidden act*.

(Citations and punctuation omitted; emphasis in original.) *Holder v. State*, 194 Ga. App. 790, 794 (4) (391 SE2d 808) (1990). "[T]he danger of death or dismemberment at some future time, in the absence of all danger at the time of [the crime], will not excuse." *Burns v. State*, 89 Ga. 527, 528 (15 SE 748) (1892).

[T]o assert a statutory affirmative defense, such as coercion, the defendant must admit all of the elements of the crime except intent; evidence of coercion is then presented to justify, excuse, or mitigate the crime by showing no criminal intent. After evidence of coercion is presented, the State bears the burden of disproving that defense beyond a reasonable doubt.

(Citations and punctuation omitted.) *Graham v. State*, supra, 239 Ga. App. at 432 (1) (b).

In his special concurrence in *Cox v. State*, 216 Ga. App. 86 (453 SE2d 471) (1995) (physical precedent only), Judge Pope reasoned that

[a]n act which would otherwise be a crime is justified (and therefore not a crime) if the actor reasonably believes the act is necessary to prevent harm to himself or another. The applicable standard is objective rather than subjective: are the circumstances sufficient to arouse the fears of a reasonable man that he or another is in danger? The external circumstance that the victim had attacked the actor on prior occasions is relevant to show the reasonableness of the actor's fears, *but personal characteristics of the actor which may make him act unreasonably are not.* The defenses addressed by Uniform Superior Court Rule 31.4 — insanity, mental illness and mental incompetency — form a separate category of defenses based on diminished capacity rather than justification. In these situations an unjustified, criminal act has occurred, but the actor argues he should not be deemed fully culpable due to his mental disabilities. Evidence of mental capacity is clearly relevant in such cases. . . . Even though evidence of "battered woman syndrome" includes testimony from mental health experts, it is a defense of justification rather than diminished capacity because it is based on prior attacks upon the actor by the victim and is thus relevant to the reasonableness of her fears.

(Citations omitted; emphasis supplied.) Id. at 89. See *Wallace v. State*, 248 Ga. 255, 262 (8) (282 SE2d 325) (1981), rev'd on other grounds, *Wallace v. Kemp*, 757 F2d 1102 (11th Cir. 1985) ("Mental abnormality, unless it amounts to insanity, is not a defense to a crime."). Our law and legal precedent do not permit a reasonable battered person standard.

In this circumstance, where the victim is a nonaggressor third party, we cannot say that the characteristics of battered person

syndrome which may make Pickle act unreasonably are relevant to her justification defense of coercion. We conclude that, as the reasonableness standard for justification is purely objective, evidence of her subjective cognitive reasoning as it relates to the battered person syndrome is simply not relevant to a justification defense.

Pickle fully presented her coercion defense and, as the trial court noted, was "able to introduce every threat through every witness, hearsay or not, of the acts of violence perpetrated upon Mrs. Pickle by Mr. Pickle" without objection. Thus, we discern no error in the trial court's refusal to admit expert testimony regarding the battered person syndrome to support Pickle's justification defense of coercion.

2. Pickle also asserts that the trial court erred in admitting evidence barred by the Child Hearsay Statute. She argues that the court erred when it found testimony from counselor Judy Dutton and psychologist Dr. Elizabeth Hudson regarding the victim's statements to be inherently reliable. She urges that the victim's statements to Dutton and Hudson that Pickle had abused her contradicted the victim's statements to other people that Pickle never abused her.

In determining whether a child's out-of-court statement is reliable and admissible as evidence under OCGA § 24-3-16, the "Child Hearsay Statute," we held that indicia of reliability must spring from the circumstances of the child's statement. *Gregg v. State*, 201 Ga. App. 238, 240 (3) (b) (411 SE2d 65) (1991). The factors which the trial court may consider, when applicable, include but are not limited to:

> (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.

(Citations and emphasis omitted.) Id. We cautioned that "[t]hese factors are to be applied neither in mechanical nor mathematical

fashion, but in that manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness." Id. at 241. "The trial court has broad discretion in determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements under OCGA § 24-3-16 only if the trial court abused its discretion." (Punctuation and footnotes omitted.) *Conley v. State*, 257 Ga. App. 563, 564 (2) (571 SE2d 554) (2002).

The trial court held an evidentiary hearing on the witnesses' testimony, and found the statements inherently reliable. The trial court noted

> some differences or additions, but I do not find the statements made to Ms. Dutton and Dr. Hudson to be that — they're very consistent in many ways. And also if you look at the testimony of . . . some of the other witnesses, there were many points that this child in her original hospitalization refused to address at all and sometimes it takes a while. I don't see any evidence of prompting or coaching by either of these two potential witnesses. I think they both were meeting with the child for purely therapeutic purposes and not for purposes of preparing for prosecution.

In this case, the victim was nine years old at the time of the alleged incidents. There was no evidence that she was forced to make her statements or that she was coached regarding what to say. Further, the statements were made in a therapeutic setting without provocation or intervention from the State. Although some statements were inconsistent with statements given to others regarding Pickle's participation in the abuse, the statements were also consistent with statements given to others. In reviewing all the factors to be considered, we conclude that the trial court did not abuse its discretion in concluding that the statements contained sufficient indicia of reliability to support their admission.

Further, "if defense counsel had the opportunity to confront and cross-examine the witness who made the out-of-court statement, the statement was admissible. [Cit.]" *Medina v. State*, 234 Ga. App. 13, 15 (1) (b) (505 SE2d 558) (1998); *Herrington v. State*, 241 Ga. App. 326, 329 (1) (527 SE2d 33) (1999). Here, the victim was available in court, but defense counsel elected not to call her. "The law requires only that the child be available to testify; it does not require the child to corroborate the hearsay testimony." (Citations and punctuation omitted.) *Bookout v. State*, 205 Ga. App. 530 (1) (423 SE2d 7) (1992).

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur fully in Divisions 1 (b) and 2, and in the judgment, and concur specially in Division 1 (a).*

ANDREWS, Presiding Judge, concurring specially.

Although I concur fully in Divisions 1 (b) and 2 and the judgment, I do not agree with Division 1 (a), because I do not believe the expert testimony regarding the battered person syndrome was admissible in this case under Georgia law, nor am I persuaded by the foreign authority relied upon by the majority.

I believe, as did the trial court, that this issue is on all fours with *Graham v. State*, 239 Ga. App. 429 (521 SE2d 249) (1999). There, as here, a mother accused of aggravated child molestation and child molestation against her children attempted to introduce evidence of the prior domestic violence against her by her husband/co-defendant in order to support her justification defense based on the battered person syndrome. As held there,

> "In this state, the battered person syndrome is not a sepa-
> rate defense and (evidence supporting this syndrome) is
> admissible only to assist the jury in evaluating a defendant's
> claim of self-defense" under OCGA § 16-3-21. (Citations
> omitted.) *Chester v. State*, 267 Ga. 9, 10 (471 SE2d 836)
> (1996), overruled on other grounds, *Smith v. State*, 268 Ga.
> 196, 200, n. 5 (486 SE2d 819) (1997). See also *Selman v.
> State*, 267 Ga. 198 (475 SE2d 892) (1996); *Chapman v. State*,
> 259 Ga. 706, 707 (4) (386 SE2d 129) (1989), overruled on
> other grounds, *Smith v. State*, supra, 268 Ga. at [200], n. 5;
> *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981); *Pugh
> v. State*, 191 Ga. App. 394 (382 SE2d 143) (1989). However,
> *self-defense is not an issue in this trial, where the criminal
> acts were directed toward non-aggressor victims. Accord-
> ingly, the battered person defense was not available . . .* and
> the trial court did not err in excluding evidence thereof. See
> *Freeman v. State*, 269 Ga. 337, 339 (1) (d) (496 SE2d 716)
> (1998).

(Emphasis supplied.) *Graham v. State*, supra at 431 (1). See also *Gravitt v. State*, 279 Ga. 33, 34 (2) (608 SE2d 202) (2005) (citing *Graham*, supra, for the proposition that self-defense and defense of others are not in issue when the defendant's acts are directed toward a nonaggressor victim).

The majority acknowledges that Pickle did file a notice of the defense of battered person syndrome and coercion. That defense was not withdrawn prior to trial and it was only during arguments

regarding the State's motion in limine to exclude the expert testimony on battered person syndrome that the defense began to argue that the evidence was to explain Pickle's conduct.

As succinctly noted by the trial court, evidence of the battered person syndrome would have been admissible "had she shot Mr. Pickle . . . , but she didn't."

To the extent that the reasoning of the majority is premised on a federal district court case and cases from appellate courts of sister states, such authority is not binding on this Court[2] and I find it nonpersuasive, especially in light of *Graham*, supra.

I am authorized to state that Judge Bernes joins in this opinion.

BERNES, Judge, concurring specially.

I concur fully in Divisions 1 (b) and 2 and the judgment, but I agree only with the judgment in Division 1 (a). While I also concur fully with the special concurrence of Judge Andrews as to Division 1 (a), I write separately to further highlight why I believe that the expert testimony concerning battered person syndrome was not admissible in this case.

First, appellant's contention that introduction of the battered person syndrome evidence was sought to negate the *mens rea* element of her crimes is contravened by the proffered testimony of appellant's expert, Dr. Marti Loring, who explained her proposed testimony as follows:

> Some of what a woman with a Battered Person's Syndrome and who may be experiencing the wheel of control, the power and control, some of what a woman who's experiencing that will do in terms of her behavior is simply not understandable to many people. That is to understand why a woman would actually *participate in harming a child* she loves or not leave during the time of terror to protect the child she loves is simply not understandable unless we talk about or I talk about as an expert the impact of the Battered Woman's Syndrome of the incredible stress and panic that would make understandable her behavior that would in fact help to explain why in the context of that battering relationship her behavior may be the safest and the most protective at that time to keep her child alive.

---

[2] See *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (1) (458 SE2d 95) (1995); *Tyson Foods v. Craig*, 266 Ga. App. 443, 444 (597 SE2d 520) (2004).

(Emphasis supplied.) Based on the proffer of the expert's testimony, it is clear that the testimony would have the effect of doing exactly what appellant cannot do — in form and in substance, appellant was attempting to present evidence of battered person syndrome as part of a justification defense. Significantly, however, through the enactment of OCGA § 16-3-21 (d), the Georgia legislature has limited the use of expert testimony relating to family violence or child abuse as part of a justification defense to prosecutions for murder or manslaughter. See *Graham v. State*, 239 Ga. App. 429 (521 SE2d 249) (1999).

Second, the proffered testimony in this case demonstrates that *Porter v. State*, 243 Ga. App. 498, 503-504 (5) (532 SE2d 407) (2000) is inapposite. In *Porter*, the psychologist's testimony explained that the defendant suffered from a psychological condition that prevented her from seeing and having awareness of the abuse to the child by her husband. We held that this expert testimony was admissible to support the defendant's defense that she had no knowledge of the abuse. Id. Here, appellant does not contend that she had no knowledge of the abuse.

DECIDED JULY 14, 2006 —
RECONSIDERATION DENIED JULY 31, 2006 ■

*Steven H. Sadow*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, John L. O'Dell, Assistant District Attorney*, for appellee.